[No. 7296.  Decided September 28, 1908.]

# H. A. HUNTER et al., Respondents, v. WENATCHEE LAND COMPANY, Appellant.[1]

BROKERS — CONTRACTS — CONSTRUCTION — "EXCLUSIVE AGENCY" — BREACH—DAMAGES.  A contract whereby the owner gave the "exclusive agency" to sell land does not imply a reservation of the right of the owner to make sales, as in the case of a unilateral contract, where it appears that the parties were nonresidents and the land consisted of over fifty thousand acres, that the contract gave the second party, who made a specialty of such sales, the exclusive right to make sales for a period of three years, in consideration of which the second party agreed to put forth his best efforts to sell and agreed to pay all costs of advertising and sale and apply the proceeds, (1) to the payment of taxes (2) $1.52 per acre to the owner, and (3) the balance to be equally divided, the second party to receive no other compensation or commission; hence the contract is broken by the owner's sale, within the three years, of the standing timber thereon, preventing the second party from making any sales, the land being chiefly valuable for its timber.

SAME—BREACH OF CONTRACT—ACTIONS—TIME FOR COMMENCEMENT. Where a party has put it out of its power to perform a contract relating to the sale of property, by selling the same, the second party may recover damages for the breach without waiting until the time of the expiration of the contract.

Appeal from a judgment of the superior court for Spokane county, Huneke, J., entered September 24, 1907, upon the special verdict of a jury in favor of the plaintiff, after a trial on the merits, in an action for damages for breach of contract.  Affirmed.

*Will H. Thompson, Happy & Hindman,* and *Chas. A. Murray,* for appellant.

*Graves, Kizer & Graves,* for respondents.

DUNBAR, J.—The plaintiffs are residents of the state of Minnesota, and the defendant is a Minnesota corporation and a resident of said state.  On the 10th day of May, 1902,

[1]Reported in 97 Pac. 494.

at the city of Minneapolis, in the said state of Minnesota, they entered into the following contract:

"This agreement made and entered into this 10th day of May, A. D. 1902, by and between Wenatchee Land Company, a corporation duly organized and existing under and by virtue of the laws of the state of Minnesota, and having its office and principal place of business in the city of Minneapolis, county of Hennepin and state of Minnesota, party of the first part, and H. A. Hunter and J. A. Young, both of the city of Minneapolis, county of Hennepin, and state of Minnesota, parties of the second part:

"Witnesseth as follows, whereas, the party of the first part is the owner of certain lands situated in the county of Chelan, state of Washington, aggregating 51,451.23-100 acres (which said lands are to be hereafter more particularly described by a separate instrument to be hereto attached and to become a part of this agreement).

"Whereas, the parties of the second part made a specialty of the sale of such lands and premises and are willing to undertake the sale of the same,

"Now, this agreement witnesseth, that in consideration of the premises and the sum of $1.00, by each to be to the other paid, the receipt of which is hereby acknowledged, the party of the first part grants unto the parties of the second part, the exclusive agency for the sale of said lands for the period of three years from date hereof.

"Said parties of the second part are hereby authorized to sell said lands, or any part thereof, at not less than two and 52-100 dollars ($2.52) per acre, except in cases where the said first party shall consent in writing to the sale of some or all thereof at a less rate per acre, provided, that each purchaser of land shall make a first payment in cash of not less than fifteen per cent of the total purchase money and that all contracts of sale shall be executed by the party of the first part and upon the request of said second parties.

"Said parties of the second part are to give reasonable time and attention to the management and sale of said lands to have same examined and advertised, and to report promptly all sales as soon as made, and to faithfully account on the first of each calendar month to said party of the first part for all proceeds that may be derived from such sales, it being

mutually agreed that the proceeds derived from the sales of said lands shall be applied as follows:

"(1)   To the payment of taxes if any accrued upon said lands.

"(2)   To the payment to said party of the first part of the sum of one and fifty-two hundredths dollars ($1.52) per acre, together with interest thereon at the rate of six per cent per annum from the date of this contract, being the sum of seventy-eight thousand two hundred five and 87-100 ($78,205.87) dollars, and interest.

"(3)   The remainder of said proceeds arising from said sales shall be divided equally and one-half thereof shall be paid to the said party of the first part, its successors or assigns, and the remaining one-half thereof shall be paid to the said parties of the second part, their heirs, executors or assigns.

"The party of the first part agrees to deliver good title discharged from all liens by way of mortgage, taxes, or otherwise, to any portion of said premises that may be sold, and will, at the time of making any contract of sale, discharge all the liens upon the land contracted to be sold.

"It is understood and agreed that said parties of the second part shall have no right or claim against the said party of the first part or on said lands or any part thereof, for commission, expenses or otherwise, except only for his one-half share of the profits arising from sales of said lands as hereinbefore provided and agreed. (Signed and witnessed.)"

The complaint alleges, the execution of the contract; that the plaintiffs proceeded to carry out the terms thereof by attempting to sell said real estate, and especially to sell the timber growing thereon, and in order to accomplish such sale caused the land to be examined and advertised at large expense to themselves; that they would have made a sale of said real estate within the time prescribed in the contract had it not been for the fact that the defendant entered into a contract in writing with Gulledge Brothers for the sale to said Gulledge Brothers of all the standing timber upon said real estate, and that, by reason of said sale, the plaintiffs were prevented from carrying out the terms of their contract with

the defendant, and hence this action for damages. The answer of the defendant corporation admits the making of the contract set forth in the complaint; admits the making of the Gulledge contract, and the sale thereunder; alleges that plaintiffs did nothing in pursuance of the terms of the contract, and that upon the making by the defendant of the contract with the Gulledges, the plaintiffs abandoned their contract and brought their action for damages.

The jury, in answer to the following special interrogatory: "Would the plaintiffs have sold the tract of real estate or a portion thereof described in the complaint, within three years from the 10th of May, 1902, if the contract had not been broken by the defendant?" answered: "Yes." They also found, in answer to a special interrogatory, that plaintiffs would have sold the land in question for $146,000 if they had not been prevented by the selling of the timber to the Gulledges; and also found that, prior to the commencement of this action, the defendant had repudiated its contract, and that the land in question was chiefly valuable for timber. These findings are justified by the record.

A demurrer was interposed to the amended complaint, which was overruled. A demurrer was sustained to the affirmative matters in the amended answer. Upon trial, a verdict was rendered in favor of respondents for the sum of $51,674.40, which was reduced by the court to $26,159.34, and was accepted by the respondents in that amount.

It is urged that the court erred in overruling defendant's demurrer to plaintiffs' amended complaint, in sustaining plaintiffs' demurrer to defendant's answer, in overruling the defendant's objection to the introduction of any testimony in behalf of plaintiffs under the amended complaint, in denying defendant's motion for an instructed verdict, and in refusing certain instructions asked by it. These assignments may all be considered together, for they are all based upon the construction which the appellant placed upon the contract.

It is the contention of the appellant that, under the law, and especially the law of Minnesota under which the contract was entered into, the appellant only bound itself not to employ rival agents, but reserved to itself the right to make a sale of the whole or any part of said property without liability to the respondents; that therefore there was no breach of the contract on the part of the appellant upon which a suit for damages could be based, and that the use in the contract of the words "exclusive agency" implies the reservation of the right to sell on the part of the appellant. Several Minnesota cases, and some cases from other jurisdictions, are cited to sustain this contention.

An examination of the cases cited, and especially of the Minnesota cases, convinces us that the broad doctrine contended for by appellant was never intended to be announced, although there may be some dictum in some of the cases which would lend color to such contention. But when the circumstances of the cases cited are investigated, that idea is dispelled, and it is found that such language was used in cases involving unilateral contracts; that the rule does not apply to the construction of mutual contracts, as in this case, and that the courts, even of Minnesota, never intended to depart from the well-established general rule, that the intent of the parties to be gathered from the words used must govern; that the whole contract must be construed together for the purpose of defining certain words used therein; and that, as announced in 9 Cyc., § 587, to determine the intention of the parties if the meaning is not clear, it is necessary that regard should be had to the nature of the instrument itself, the condition of the parties executing it, and the objects which they had in view, for which purpose parol evidence is admissible.

Notwithstanding the use of certain set expressions, such as "exclusive agency," it is impossible to view this contract in the light of all the circumstances surrounding it, the condition of the parties, and the obligations assumed by the re-

spondents, and conclude that it was the intention that the fruits of all the labor and money expended by the respondents in an honest attempt to carry out the terms of the contract should be appropriated by the appellant; and that is what the testimony in this case shows was done or attempted to be done.   That there was, in substantial effect, a breach of the contract on the part of the appellant is evident, for while technically there may be no breach of the contract until after the time for performance has expired, yet when one party to the contract has by his own acts disqualified himself or placed it beyond his power to perform, there is neither sense nor justice in compelling the injured party to await the time of the expiration of the contract.   We held in *Munson v. McGregor*, 49 Wash. 276, 94 Pac. 1085, that where, pending the performance of a contract for the sale of land, the subject-matter of the contract is conveyed to a third party, the contract is thereby breached, and the vendee may maintain an action to recover damages for such breach.   In this case, although the land itself was not sold, the timber—which was the most valuable part of the land—was sold, which practically prevented the sale of the land according to the terms of the contract.

There seems to be no merit in appellant's case, either under the law or the facts.   Affirmed.

RUDKIN, ROOT, FULLERTON, and CROW, JJ., concur.

HADLEY, C. J., and MOUNT, J., took no part.