## James C. Young v. Metcalf Land Co.

Opinion filed March 19, 1909.

Rehearing November 5, 1909.

**Brokers — Employment of Broker — Construction of Contract.**

1. A contract in writing was entered into between an owner of large tracts of land in this state and a real estate dealer, by the terms of which the real estate dealer should have the exclusive sale of said lands for a period of ten years at such prices as he may deem best, provided that no tract should be sold for less than the appraised value named in Schedule A attached to the contract. Out of the proceeds from sales made a stipulated amount was to be paid to the landowner and the balance equally divided between the parties to the contract. *Held,* that the dealer had the sole right to fix the selling price of lands, provided, however, that the prices were not less than the appraised value, and that the owner could not arbitrarily refuse to approve the sales for the reason that the prices were not satisfactory to the owner.

**Contracts — Interpretation — To Give Effect to Intention of Parties.**

2. A contract must be interpreted so as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable and capable of being carried into effect.

**Broker — Sale Prevented by Owner — Measure of Damages.**

3. The dealer having been prevented by the landowner from making the sales is entitled to the profits he would have made had the offers been accepted, and sales approved by the landowner.

Appeal from District Court, Cass county; *Chas. A. Pollock,* J.

Action by James C. Young against the Metcalf Land Company. Judgment for plaintiff, and defendant appeals.

Affirmed.

*Koon, Wehlan & Bennett* and *Ball, Watson, Young & Lawrence,* for appellant.

Where no terms are fixed by contract, the broker is to submit offers for his employer's approval; the broker is not entitled to his commission until his employer accepts the offer. 23 Am. & Eng. Enc. of Law (2nd.) 921; Sawyer v. Bowman, 59 N. W. 27; Goin v. Hess, 71 N. W. 218; Berry v. Tweed, 61 N. W. 858; Kiam v. Turner, 21 Tex. Civ. App. 417.

A broker must submit a buyer who is ready, willing and able to purchase on terms proposed by, or acceptable to the vendor. Clark & Styles on Agency, p. 1658; Neeley v. Lewis, 38 'Wash., 20; Mattingly v. Pennie, 39 Pac. 200. Such broker must not only produce such purchaser, but he must secure a binding contract from him, or bring such buyer and vendor together, so the ·latter can secure such contract if desired. Flynn v. Jordal, 100 N. W. 326; Johnson v. Wright, 99 N. W. 103; Mattingly v. Pennie, supra; Kalley v. Baker, 29 N. E. 1091; McDonald v. Smith, 108 N. W. 291; 19 Cyc., 255; Hayden v. Grillo, 35 Mo. App. 647; Gerding v. Haskin, 141 N. Y. 514; Simpson v. Smith, 36 Misc. (N. Y.) 815.

Where the broker does not disclose to his principal the purchaser's name, the owner may refuse to sell without being liable for commission. 23 Am. & Eng. Enc. of Law (2nd Ed), 921; 19 Cyc., 266, note 72; Hayden v. Grillo, 35 Mo., App. 647; Gerding v. Haskin, 141 N. Y., 514; Simpson v. Smith, 36 Misc., (N. Y.) 815.

Broker must allege and prove that the purchaser found was able, willing and ready to buy on the terms ·of his proposed contract. Tracy v. Fobes, 109 N. W. 772; McDermott v. Mahoney, 106 N. W. 925; Iselin et al. v. Griffith, 62 Ia. 668; 18 N. W. 302; Pratt v. Hotchkiss, 10 Ill., App. 603; Leahy v. Huin, 33 Ill. App. 461; Coleman v. Mead, 76 Ky. 358; Russell v. Hurd, 113 Ill. App 63; Alt v. Doscher 92 N. Y. Sup. 439; Colburn v. Seymour, 76 Pac. 1058; Clark and Styles on Agency, p. 1668 and cases cited; Snyder v. Fidler 101 N. W. 130.

*L. W. Collins, Emerson H. Smith,* and *Engerud, Holt & Fraine,* for respondent.

In construing contracts, regard must be had to surrounding circumstances and situation of parties; and their intent given effect if it can be done without violence to the language of the contract. Stewart v. Marvel, 101 N. Y. 357; Taylor v. E. M. S. Co. 124 N. Y. 184; Jacquin v. Bontard, 35 N. Y. Supp. 496. Rev. Codes 1905, Sec. 5340.

The measure of plaintiff's damages was the profits he would have earned had the sales been consummated. Taylor Mfg. Co. v. Hatcher, 39 Fed. 440; Jacquin v. Boutard, 35 N. Y. Supp. 496; Taylor v. E. M. S. Co., 124 N. Y. 184; Fairchild v. Rogers, 20 N. W. 191; Durkee et al. v. Gunn, 21 Pac. 637.

The value of a contract is the sum stated on its face. Sutherland on Damages, Vol. III. pp. 520, 521 (1884 Ed.) ; Hart v. Hoffman, 44 How. Pr. 168; Goss v. Brown, 31 Minn. 484; 18 N. W. 290.

CARMODY, J. This is an action by respondent, a real estate dealer of Minneapolis, Minn., to recover damages against appellant, a New Jersey corporation, that owned a large number of tracts of land in Barnes, Stutsman, and other counties, in this state. On January 20, 1897, they entered into the following contract:

"This agreement, made this 20th day of January, A. D. 1897, by and between the Metcalf Land Company, of New Jersey, party of the first part, and James C. Young, of Minneapolis, Minnesota, party of the second part.

"Witnesseth: Whereas said Metcalf Land Company is the owner in fee of the following described lands in the County of——State of North Dakota, as shown by Schedule 'A' hereunto annexed, and marked 'Exhibit A.'

"And whereas, the said Metcalf Land Company has this day given the exclusive sale and management of said lands to said James C. Young, now, therefore, the said parties hereto hereby agree with each other, as follows: That said James C. Young has caused to be made a careful examination of said lands and an appraisement thereof, which said appraisement is marked opposite each tract upon said Exhibit A and is hereby accepted by said Metcalf Land Company. That said James C. Young shall have the authority to sell said land, or any part thereof, at such a price as he may deem best, provided, however, that no tract shall be sold for less than the appraised value named in said schedule A and it is distinctly understood that before any sale shall be binding upon the said Metcalf Land Company, the contract shall be approved and terms of payment thereof accepted by the said Metcalf Land Company. That said James C. Young is further to give reasonable amount of time and attention to the management and sale of said lands, and agrees to give to the benefit of the said Metcalf Land Co., the highest price for the sale of such lands which he can obtain, and to faithfully account to said Metcalf Land Company for all the proceeds which may be derived from such sales and make quarterly return of such sales and payments of such funds as may then be in his possession. And said James C. Young further agrees that he will use all faithful and reasonable effort to have the land sold under this contract put under cultivation as rapidly as possible by the purchasers thereof,

and it is mutually agreed that in case of said James C. Young advancing money for the purchase of seed, grain or any other necessary improvements on premises sold under this contract, that he may take as security the seed lien on crops, or take any other sort of security which he deems expedient or desirable, and the money so advanced by the said James C. Young shall be first returned with interest from the purchaser before any application of payment is made under the contract of sale, any balance remaining, or paid in by the purchaser after the money so advanced has been returned shall be applied in the usual way under the contract of sale.

"It is further mutually agreed, that the proceeds derived from the sale of said lands shall be applied as follows:

"First:   To the payment of said Metcalf Land Co. of the sum of two dollars ($2) per acre, together with interest thereon at six per cent. (6%) per annum, from the date of this contract, and also of all taxes accruing or becoming due upon said lands from and after the date of this contract. including the tax of 1896, paid by said Metcalf Land Co., together with interest at the rate of six per cent. (6%) per annum thereon, from date of payment thereof.

"Second:   The remainder of said proceeds shall be divided equally and one-half part thereof shall be paid to the said Metcalf Land Co., its successors or assigns, and the remaining one-half part thereof shall be paid to James C. Young, his heirs, administrators or assigns.

"It is further mutually agreed, that said James C. Young shall retain no profit under this contract until the whole amount of two dollars ($2) per acre, with interest thereon, and taxes, with interest thereon as herein provided, has been returned to the said Metcalf Land Company.

'It is further mutually agreed, that this contract shall remain in force and be mutually binding upon the parties hereto for a period of ten years (10) from the date hereof, unless sooner dissolved by written mutual consent, or by the death of James C. Young.

"It is distinctly understood and agreed that this contract is personal to James C. Young, and that no interest of any kind whatsoever in said lands, or any part thereof, is hereby conveyed or intended so to be conveyed by the said Metcalf Land Company to said James C. Young, and same shall terminate upon the death of the said James C. Young, provided, however, that in the event of the death of said James C. Young be-

fore the expiration of this contract, his administrators or assigns are to be entitled to his interest in the proceeds of all lands which have been sold, either for cash or on credit, and shall receive therefor the same amount as he himself would have done had he continued to live. It is understood and agreed that said James C. Young shall have no right or claim against the said Metcalf Land Company, or on said lands, or any part thereof, for commissions, expenses, or otherwise, except only for his one-half share of the profits arising from said sales, to be ascertained and divided as hereinbefore mentioned, stipulated and agreed.

"In witness whereof, the said parties hereto have hereunto set their hands and seals the day and year first above written."

Afterwards, and on or about the 18th day of November, 1905, the parties entered into a supplementary contract for the purpose of settling some disputes between them; none of them, however, relating to the transactions mentioned in this action. The supplementary contract, so far as material here, is as follows: "As a part of this proposition it is understood that under the original contract Mr. Young has the right to sell the lands at reasonable figures, not less than the appraised values, and that it is the duty of the company to approve of such sales without delay. And Mr. Young concedes that as to all tracts of land which he has not contracted for sale or sold prior to the expiration of the ten-year period prescribed in the original contracts, he will make no further claim upon or assert any agency rights therein when said ten-year periods have expired, and contracts for sale have not been made."

The complaint contains 17 causes of action. Briefly stated the allegations are: That appellant is a corporation organized under the laws of New Jersey; the execution of the contract; that the respondent proceeded to carry out the terms thereof, and sold a large quantity of the lands at prices, and on terms mutually satisfactory to both of said parties, and in accordance with the contract; that appellant duly approved of said sales; that each of the parties to this action made a profit after paying to appellant its fixed charges; that respondent negotiated the sale of one tract covered by the contract on the usual terms at a fair price; that appellant refused to sell at the price named; and arbitrarily fixed a higher price on the land, and declined to permit respondent to sell land at a fair price fixed by him. In other words, respondent claims that appellant violated the terms of the contract by withdrawing from

respondent the right given by the contract to determine the selling price of the land. As a result, he was prevented from selling the land, and thus lost the profits which he would have earned on the sale. Each of the other causes of action is the same, but relates to different tracts of land. The contract and a list of the lands owned by appellant and their appraised value were attached to and made a part of the complaint. The appellant answered, admitting its incorporation under the laws of New Jersey, the execution of the contract, the ownership of the lands mentioned in the complaint, and their appraised value, that respondent sold a portion of said lands at prices and on terms mutually satisfactory, which sales were approved by the appellant, and denied each and every other allegation in said complaint.

This action was tried in the district court of Cass county before Judge Pollock and a jury. Respondent dismissed as to his sixth cause of action. After both parties rested, respondent asked leave to amend his complaint by adding thereto in each of the causes of action a paragraph to the following effect, viz: "That said purchaser so contracting or offering to purchase said land was one who was ready, willing, and able to purchase the said land on the terms stated." Appellant objected to the allowance of the amendment, and insisted that it came too late, having been made after all the evidence was in, which objection was overruled, and amendment allowed.

At the commencement of the trial appellant objected to the introduction of any evidence under the complaint, as follows: "The defendant objects to the introduction of any evidence in this case upon the ground that the complaint does not state a cause of action, or sufficient facts to constitute a cause of action, and specified as grounds for the objection that it appears from the complaint that the plaintiff is seeking to recover commissions as a real estate broker for the sale of real estate; that it appears that his action is based upon a written contract of agency, 'Exhibit 1' attached to the complaint, and that under such contract he is entitled to no commissions except upon sales actually made and approved, and it appears affirmatively from the complaint that no sales were made or consummated upon which he is claiming commissions; the sales were not approved; further, that if plaintiff's complaint be construed as an action to recover damages for the arbitrary refusal of the defendant to approve the sales that it does not constitute a cause of action, for the reason that the complaint, with the contract attached

thereto, shows affirmatively that there was no legal duty or obligation upon the defendant to approve these proposed sales upon which his cause of action is based, and this objection is made as to each and every one of the 17 causes of action embraced in the complaint." Which objection was overruled.

At the close of the respondent's case appellant moved for a directed verdict, as follows: "The plaintiff having rested its case, the defendant now moves the court for a directed verdict in its favor upon all the issues and as to each cause of action, upon the ground that the plaintiff has failed to make out a case, and without waiving, and intending to reserve all other grounds for this motion, the defendant specifies particularly the following reasons for the granting of its motions: (1) That the plaintiff has not alleged or proved the consummation of any sale of land under the contract attached to agency contract attached to the complaint, which would entitle him to a commission. (2) That the plaintiff does not allege, and the proof does not show, facts sufficient to entitle the plaintiff to recover commissions in the absence of the consummation of the proposed sales. (3) Upon the ground that the undisputed evidence shows that the authority of the plaintiff to sell at a price of his own making, or at a reasonable price, if any such authority he had was revoked, and terminated prior to the making of the sales which constitute his causes of action; and the only authority as shown by the undisputed evidence which the plaintiff had at the time of making the sales in question was to sell at the figures named by defendant. The foregoing motion is made applicable to each and every one of the 17 causes of action, and is not meant to be exclusive, but for the purpose of attracting the court's attention to the chief grounds upon which we rely in this motion. And this motion is made with the sole purpose of obtaining a ruling upon a question of law, and reserving its right to a submission of the issues of fact to the jury, notwithstanding the making of this motion. That there is no pleading or competent evidence upon which a recovery can be had for a wrongful revocation of plaintiff's agency as to the lands in question, if there was in fact a revocation, and it was in fact wrongful." This motion was denied. Appellant rested without introducing any evidence. The appellant renewed the motion for a directed verdict which was made at the close of the

respondent's case in the language and with the reservations there-
in stated. This motion was denied. The respondent then moved the
court to instruct the jury to return a verdict in his favor for the
sum of $7,592.26, which motion was granted. Judgment was entered
on the verdict and appeal taken therefrom.

It was stipulated that respondent's share of the profits which he
would have made had the sales been approved by the appellant were
$7,592.26. The terms of the sale were not fixed in the contract, but
the evidence shows that their course of dealing had established a
form of sale contract, which both parties understood, consented to,
and acted upon. No question had been raised as to respondent's
right to fix the selling price of each tract until near the end of the
contract period. On April 13, 1906, appellant wrote respondent
complaining of the prices at which he was selling the land, and stat-
ing that it would not approve any more sales unless they showed an
advance over previous ones. To this respondent replied that he
did not recognize appellant's right to make any ruling that would
prohibit him from making sales at reasonable prices. The first
sales made by respondent which were disapproved by appellant (un-
less possibly one of which the evidence is not very clear) were
made during the months of May and June, 1906, and were disap-
proved by appellant on June 13, 1906. From this time on appellant
insisted on fixing the selling price of the lands, but did not furnish
any new appraisement of the lands remaining unsold until Septem-
ber, October, and November, 1906. During the period from June,
1906, until the end of the contract period, January 20, 1907, respond-
ent sold some lands at prices fixed by appellant but at the same
time denied the right of appellant to fix arbitrary prices on the
lands. Between May 18, 1906, and January 20, 1907, appellant re-
fused to approve of 16 sales made by respondent on the ground that
the prices were inadequate; these being the sales involved in this
action. "In construing contracts, regard must be had to the sur-
rounding circumstances and the situation of the parties; and the
real intent of the parties must be given effect if that can be done
without doing violence to the language of the contract." Stewart
v. Marvel, 101 N. Y. 357, 4 N. E. 743; Taylor v. E. M. S. Co., 124
N. Y. 184, 26 N. E. 314; Jacquin v. Boutard, 89 Hun. 437, 35 N.
Y. Supp. 496. "A contract must be so interpreted as to give effect
to the mutual intention of the parties as it existed at the time of
contracting so far as the same is ascertainable and lawful." Rev.

Codes 1905, § 5340. "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the the intention of the parties." Rev. Codes, 1905, § 5347. "A contract may be explained by reference to the circumstances under which it was made and the matter to which it relates." Rev. Codes 1905, § 5351. "Stipulations which are necessary to make a contract reasonable or conformable to usage are implied in respect to matters concerning which the contract manifests no contrary intention." Rev. Codes 1905, § 5359. Applying these principles, it is clear to us that respondent had the right to fix the selling price of the land, provided, however, that no tract could be sold for less than the appraised value ot the time of the contract. The contracts of sale and the terms of payment thereof were subject to approval and acceptance by appellant. But appellant could not arbitrarily withhold its approval, and could not withhold its approval at all if the land sold at a fair price, and for not less than its appraised value as hereinbefore stated. The measure of respondent's damages was the profits he would have earned had the sales been consummated. The amount of these profits was fixed by stipulation. Appellant, having disapproved of the proposed sales on an untenable ground, prevented respondent from earning the profits which he would have earned had the sales been made. Taylor Mfg. Co. v. Hatcher (C. C.) 39 Fed. 440, 3 L. R. A. 587; Jacquin v. Boutard, 89 Hun. 437, 35 N. Y. Supp. 496; Taylor v. E. M. S. Co., 124 N. Y. 184, 26 N. E. 314; Fairchild v. Rogers, 32 Minn. 269, 20 N. W. 191; Durkee v. Gunn, 41 Kan. 496, 21 Pac. 637, 13 Am. St. Rep. 300; Hunter et al. v. Wenatchee Land Co., 50 Wash. 438, 97 Pac. 494. In Durkee et al. v. Gunn, supra, Durkee & Stout entered into a written contract with Gunn & Marr, of which plaintiff was a member, by the terms of which Gunn & Marr were given the exclusive sale of a tract of 40 acres of land belonging to defendants, which was platted by said Gunn & Marr as part of Ft. Scott, Kan. The land was appraised at $300 per acre, the profits above that amount to be divided equally between the contracting parties, except that the owners of the land might withdraw from the agreement that portion of the tract south of a certain road, but if they did so, Gunn & Marr had the right to retain it on the terms stated, except the net price to Durkee & Stout was to be $350 per acre. Gunn & Marr afterwards dissolved partnership, which was

known to defendants, and Gunn continued the business. The property advanced in value to $750 per acre. Gunn made some sales which defendants refused to approve. They conceded the contract, and prevented the plaintiff from making any more sales. He then brought an action for damages for breach of the contract. Held, that he was entitled to recover such compensation as damages as was equal in amount to his share of the profits which would have resulted had the land been sold by him.

In Hunter et. al. v. Wenatchee Land Company, supra, the Wenatchee Land Company, owning large tracts of land in the state of Washington, entered into a written contract with the plaintiffs by the terms of which they were to have the exclusive sale of the land at a fair value and not less than $2.52 per acre. Out of the proceeds derived from the sale of said land they were to pay to defendants the sum of $1.52 per acre, together with the interest thereon at the rate of 6 per cent. per annum from date of the contract. The remainder of the proceeds arising from such sales to be divided equally, one-half to each party. This land was chiefly valuable for timber. After making the contract, and before any sales had been made, the defendant sold the timber on said lands. The plaintiffs then brought an action for breach of contract. The jury found that plaintiff would have sold the land for $146,000, which was $2.52 per acre, had not the contract been broken by the defendant. Held, that the plaintiffs were entitled to recover the profits they would have made, had they sold the land at the price hereinbefore mentioned.

It is urged that the court erred in overruling appellant's objection to the introduction of any testimony in behalf of respondent under his complaint, in allowing respondent to amend his complaint at the close of the testimony, in denying appellant's motion for a directed verdict, and in its ruling on the admission of evidence against the objections of appellant. Under our view of the case, as hereinbefore stated, these rulings were correct. Appellant makes a very elaborate argument on the theory that a broker is not entitled to his commissions unless he alleges and proves that he found a purchaser who was financially ready, able, and willing to purchase on the proposed terms, and cites a large number of authorities. We have examined the authorities thus cited. Most of them hold that a broker, to recover his commissions for producing a purchaser where the sale is not made, must show that the person presented by him was able

financially, as well as ready and willing to purchase. There are other cases, however, which hold that the burden of proof is on the principal to show that the person produced is not responsible on the ground that it is presumed, until the contrary appears, that the person procured as a purchaser is solvent and pecuniarily able to make the purchase. In our opinion neither of these two lines of authorities apply to the facts in this case. It is undisputed that the parties had by their course of dealing for several years established a form of contract and certain terms of sale deemed acceptable to both parties. The appellant found no fault with the terms of the sale, and expressed no desire to change, but refused to approve the sales on the sole ground that the prices were inadequate. This he could not do as hereinbefore stated. McFarland v. Lillard, 2 Ind. App. 160, 28 N. E. 229, 50 Am. St. Rep. 234, was an action brought by the plaintiff to recover commissions for finding a purchaser for some real estate belonging to the defendant. The court says: "It is doubtless true that, if the purchaser was not able to buy and pay for the land upon the terms of the contract, the agent could not claim to have procured a purchaser. But it is not always necessary that the agent, before he will be entitled to recover, must allege and prove the financial ability of the purchaser as the same will often be presumed." The court further says that this conclusively shows that the appellant repudiated the contract of sale not on account of the financial inability to comply with the contract, but because the purchaser's wife was dissatisfied, and further says that the owner cannot after repudiating the sale on some other ground than the purchaser's financial inability to complete the purchase defeat an action for a broker's commission on the last-mentioned ground unless that ground is made an element of the contract between the broker and the owner. Colburn v. Seymour, 32 Colo. 430, 76 Pac. 1058, cited by appellant, was an action by a broker to recover commissions on proposed sales which the property owner refused to make. The following language is used: "Certainly he has not been prevented from earning his commissions by the mere fact that the defendant refused to sell the property unless he proves that, but for the conduct of the defendant, the sale would have been consummated." In the case at bar it was stipulated as follows: "That the plaintiff's one-half of the profits on each of the causes of action which he would have made had the offers been accepted by the defendant were the following amounts, respectively"—and then follows the amounts of the different causes of action which make a

total of $7,592.26, the amount of the verdict. We think the evidence shows that respondent would have made the sales as set forth in his complaint, and the profits asked for, if appellant had accepted the offers made.

Appellant urges that, under the terms of the contract, respondent was not entitled to any commissions until he secured an offer which was accepted by his employer. We do not think the contract bears this construction. It is true that it required all sales negotiated by respondent to be made, subject to the approval of appellant, but this did not mean that the company could arbitrarily withhold its approval. To so construe the contract would defeat its purpose. Taylor v. E. M. S. Co., 124 N. Y. 184, 26 N. E. 314. Appellant insists that respondent's agency not being coupled with an interest was revocable, and that, before any of the alleged sales upon which respondent relied were made, appellant revoked any authority that respondent had to sell at prices fixed by him if he ever had any such authority. However this may be, appellant would still be liable to respondent for all damages resulting from the breach of the contract. Hawley v. Smith, 45 Ind. 183; Durkee et al. v. Gunn, 41 Kan. 496, 21 Pac. 637, 13 Am. St. Rep. 300.

This is not an action to recover commissions for the sale of real estate, but an action to recover damages for breach of contract.

Finding no reversible error in the record, judgment affirmed.

MORGAN, C. J., and FISK and SPALDING, JJ., concur.

ELLSWORTH, J. (dissenting). I cannot agree with the construction placed by my Associates upon the contract involved in the case at bar to the effect that respondent had the sole right to fix the selling price of the lands subject only to the condition that the price should not be less than the value fixed by the first appraisement. The clause, "and it is distinctly understood that, before any sale shall be binding upon the said Metcalf Land Company, the contract shall be approved and terms of payment thereof accepted by the said Metcalf Land Company," is obviously intended as a limitation of the power granted to Young to sell at such a price as he may deem best; and there is great force in the suggestion that it was the original intent of the parties that appellant should approve the contracts of sale with reference to the price at which the land was sold as well as in other particulars. The parties themselves, however, seem to have agreed upon a certain construction of this clause of

the contract, and whether or not their construction is correct, it was acted upon to such degree that neither party should now be heard to urge a different meaning. This construction is embodied in a writing subscribed by both parties, a clause from which is quoted at length in the majority opinion, and is to the effect "that under the original contract Mr. Young has the right to sell the lands at reasonable figures, not less than the appraised values, and that it is the duty of the company to approve of such sales without delay." Respondent was therefore not permitted to arbitrarily fix a price of sale at any figure above the original appraisement, but must sell only at reasonable prices; otherwise appellant might refuse to approve the contract, and such action on its part would not be a breach of its contract with Young. It was only when the price at which he tendered a sale was "at a reasonable figure" that appellant might not arbitrarily refuse to approve the contract of sale on account of the price. The determination of what prices were reasonable and what unreasonable was not left to the judgment of either respondent or appellant, but was a question for the trial court under all the circumstances of the case. Whether or not the figure offered for a certain tract was reasonable depended on several considerations, important among which was the actual market value of the land at the time each sale was made. A price that was reasonable in 1897 and 1898 might in 1905 and 1906 be so far below the actual value of the land, at that time, as to be very unreasonable.

Respondent, therefore, could maintain his cause of action only upon the theory that he sold the lands at reasonable prices and a fair market value, which appellant arbitrarily refused to accept. He assumes that proof of such facts is a necessary element of his cause of action when he alleges in his complaint that the price offered "was the reasonable and fair market price, and was the fair market value per acre for said tract of land, and that it was the highest price that could be obtained for said land by plaintiff." There is no presumption of law, however, that the prices at which respondent claims he sold the lands were reasonable or a fair market value at the time of the sale. Appellant in each case claimed that the price offered was below the actual value of the lands, and for that reason refused to approve the contract or accept the price. The denials of the answer raised a direct issue upon the allegations last quoted, and

put respondent to his proofs. Unless, therefore, respondent pro-
duced evidence sufficient to satisfy a jury that the price offered was
reasonable and a fair market value, appellant cannot be held for
breach of contract. Respondent had no more right to fix an ar-
bitrary valuation on the land than appellant had to arbitrarily refuse
to approve a contract of sale made at a reasonable price. There is
absolutely no proof that the prices for which respondent claims to
have sold the lands were reasonable unless his assertion that in cer-
tain cases the prices offered were "reasonable and acceptable" can
be regarded as such proof. On the other hand, appellant claimed to
have had an appraisement made of the lands by disinterested parties
shortly before the time the alleged sales were made, and that the
price sold for was in each case below the appraisement. Such ap-
praisement would seem to be entitled to much greater weight as
evidence of the actual value of the lands than the bald conclusion of
respondent that the prices offered were "reasonable and acceptable."
In any event the question of reasonable price was clearly one for
the jury, and should have been submitted to it as demanded by ap-
pellant at the close of the trial.

The question whether the action is one to recover a broker's com-
mission or for damage for breach of contract has received a great
deal of attention in the briefs of counsel; but whatever distinctions
may be made in the character of these actions, respectively, there is
little distinction in the proof required to establish a measure of dam-
age. In the first case, in order to recover, respondent must show
that he had produced a purchaser ready, willing, and able to carry
out a contract of sale at a reasonable price, and that appellant then
refused to convey. In the second case he must show a breach of
contract by appellant, and prove "detriment proximately caused
thereby, or which in the ordinary course of things would be likely
to result therefrom." Section 6563, Rev. Codes 1905. Such dam-
ages must be clearly ascertainable in both their nature and origin.
They must be actual, not speculative; founded on fact, not con-
jecture. Hudson v. Archer, 9 S. D. 240, 68 N. W. 541. In order
that he might recover such damages, respondent must satisfy the
jury that he could and would have made bona fide sales of the lands
to responsible purchasers for their reasonable market value within
the time fixed by his contract if he had not been prevented from
so doing by the unauthorized acts of appellant.

Respondent seems, upon the trial, to have recognized that it was incumbent on him to make proof of the fact that in each case of an alleged sale "said purchaser so contracting or offering to purchase said land was one who was ready, willing, and able to purchase the said land on the terms stated," as he asked leave to amend his complaint by inserting such allegation; and it would seem that where he was relying for proof of his damage upon sales actually made that he correctly assumed to show by this means that his sales were bona fide and made to responsible parties. The allegation inserted by amendment was covered by the denials of appellant's answer, and respondent was thus put to his proof. He offered no evidence, however, from which a jury might reasonably infer either that he had purchasers who were ready, willing, and able to purchase the land on the terms stated, or that the lands were sold in good faith to responsible purchasers for their reasonable market value at the time of sale; and at the close of the trial, although appellant insisted that these questions together with the other questions of fact arising in the case be submitted to the jury, the trial court directed a general verdict in favor of respondent.

In the status of the case at the close of the testimony, in my opinion, respondent's evidence under the most favorable construction falls short of proof of a cause of action either for the recovery of a broker's commission or for damages for breach of contract. The entire failure of any competent evidence upon several essential points might have justified the trial court in directing a verdict for defendant. Certainly, in view of the vague, doubtful and conflicting character of the evidence offered on these points, the trial court was not warranted in holding that intelligent minds might not fairly differ in the conclusions necessary to sustain respondent's cause of action and in directing a verdict for the plaintiff.

## ON REHEARING.

CARMODY, J. A rehearing was granted in this case, and elaborate and exhaustive oral and written arguments were made on both sides. After carefully reconsidering the case, we are convinced that the result reached in the former opinion is right. On the trial of this action in the district court defendant contended that the evidence did not show facts sufficient to entitle the plaintiff to recover commissions in the absence of the consummation of the proposed sales;

that the undisputed evidence showed that the authority of the plaintiff to sell at a price of his own making, or at a reasonable price, if any such authority he had, was revoked and terminated prior to the making of the sales which constituted his causes of action, and the only authority, as shown by the undisputed evidence that the plaintiff had at the time of making the sales in question, was to sell at figures named by the defendant. In other words, that defendant had the right to fix the selling prices of the land. We do not so construe the contract or the evidence. Plaintiff had the right to sell the lands at reasonable figures, not less than the appraised value. The evidence shows that the price offered and submitted to the defendant by plaintiff for each tract of land in controversy was a reasonable and fair price for said tract. The evidence abundantly discloses plaintiff's qualifications, as an expert, to testify upon the question of the reasonable values of the lands in controversy. Paragraph 2 of the contract shows that before it was entered into plaintiff had caused to be made a careful examination of the lands and an appraisement thereof, which appraisement was marked opposite each tract, and was accepted by the defendant and attached to the contract. Paragraph 3 of the contract shows that plaintiff had authority to sell the land, or any part thereof, at such a price as he might deem best, not less than the appraised value named in the schedule. After the contract had been in force more than eight years, a supplemental contract was entered into which shows that plaintiff had the right to sell the lands at reasonable figures, not less than the appraised values, and that it is the duty of the company to approve of such sales without delay. The defendant had accepted plaintiff's appraisement of the land. Plaintiff testified that the price offered for each tract of land in controversy by each proposed purchaser was deemed by him reasonable and advisable to accept.

Appellant strenuously contends, as it did on the first argument, that plaintiff had to show by competent evidence that each proposed purchaser was able, ready and willing to make the purchase. This question, as far as the record shows, was not raised in the court below, but, assuming its contention in this respect to be correct, we think the evidence sufficiently shows that each purchaser was able, ready, and willing to complete his purchase, and that each sale would have been made if the defendant had approved of it. The proposed purchaser for each tract of land made a binding written offer which defendant could enforce as soon as it accepted the said offer. We

think the evidence shows that defendant, by its conduct, prevented the plaintiff from earning his one-half of the profits on each of the causes of action, the amount of which profits was agreed upon.

MORGAN, C. J., and FISK and SPALDING, JJ., concur.

ELLSWORTH, J. (dissenting.) I deem that a better understanding of all matters passed upon by the court in this case can be secured by making the points considered on rehearing the subject of a separate dissent as suggested by the arrangement adopted in the majority opinion. The remarkable shift in position of the parties which took place upon the rehearing of this appeal renders such division into parts almost necessary. Further than this, it better serves to illustrate the changes in view of the parties and of a majority of the court between the first hearing and rehearing and to bring out perhaps somewhat more clearly the reasons for my dissent.

As shown by an examination of the opinion upon the first hearing, the basis and groundwork of the decision was a construction of the contract involved by a majority of the court, to the effect "that the dealer [that is, the respondent] had the sole right to fix the selling price of the lands." It was also contended by respondent, and held in that opinion, that the respondent, having been prevented by act of appellant from making sales under the contract, was entitled to recover the profits he would have made had the offers received by him been accepted without reference to the usual test of whether or not the purchaser presented by him was ready, willing, and able to make the purchase. My dissent to that opinion was based upon the considerations: (1) That a proper construction of the contract did not give respondent the absolute right to fix the selling price of the lands, but required him to make sales at reasonable figures not less than the appraised values; and (2) that the sales not having been consummated, in order to prove a cause of action against appellant, respondent must, among other things, produce satisfactory and competent evidence that the purchasers whose offers he claimed to hold were ready, willing, and able to make the purchase. Both of these propositions were combatted by respondent in his original brief and on his first argument of the case. On the rehearing, in strong contrast to his first contention, respondent conceded that the correct construction of that clause of the contract providing for fixing a selling price is that "Young had no right to arbitrarily fix the selling price; on the contrary, he was bound

to act with diligence in good faith and reasonably and to put forth his efforts to get a reasonable price for the land and as much as he could. And, if he failed to observe any or either of the three implied obligations under which the contract placed him, it would be a breach of duty, and his act would impose no obligation on the other party." This plainly is a concession that, in order to maintain this action, Young must prove that the offers of purchase which he claimed to hold were made at reasonable prices. Such is admitted by the modified view of the majority of the court on rehearing in the words: "Plaintiff had the right to sell the land at reasonable figures not less than appraised value." This sweeping reversal of a fundamental principle of the first decision of the majority of the court led naturally to the expectation of a reversal of the decision itself; and the fact that the conclusion arrived at is the same emphasizes the fact that it is the result only and not the reasoning of the former opinion that is held to be right. All changes of attitude either upon the part of respondent or of the majority of the court are not, however, so remarkable in my opinion as the holding that notwithstanding this complete reversal of the basic principle of the former decision "the evidence shows that the price offered and submitted to the defendant by plaintiff for each tract of land in controversy was a reasonable and fair price for said tract." The only evidence in the record that can be said to touch even remotely upon the question of the reasonable value represented by the prices named in the offers to purchase is contained in respondent's own assertion that the price offered was one which he deemed "reasonable and acceptable." This statement is made without the slightest preliminary showing that the plaintiff had any acquaintance whatever with the tract of land concerning which he testified or with the value of the lands of that character in the community in which the land lay. More than this, he did not attempt to say what was the actual value of lands of that quality in the locality in which these were situated, but gave simply his opinion as to the value that to a dealer in lands under the circumstances of this sale was reasonable and acceptable.

The only support to such evidence suggested by the majority opinion is that "the evidence abundantly discloses plaintiff's qualifications as an expert witness to testify on the question of the reasonable values of the land in controversy." I do not think that it has ever been held in any court that the value of real estate is a proper subject for expert testimony, and know of no reason why

rules of evidence should be relaxed to permit the introduction of tes-- timony of doubtful or inferior quality upon a question of this char- acter, where, as in this case, the subject of valuation is spread out before the world. A statement of value, even when made in abso- lute terms by a witness acquainted with the land and with going prices in the community, has in it a large element of opinion or con- clusion. To permit a witness whose qualification is simply that of an expert in the sale of lands to express an opinion that a certain sum is a reasonable value for lands with which he is wholly unacquainted means simply to build one conclusion on another and thus to produce a result doubly fallacious. The question of the value of these lands was one concerning which any person acquainted with the lands and with the values of real estate in the locality in which they lay was competent to testify. There is no question but that such witnesses could have been produced. Such being the case, why should the mere conclusion of a dealer who lived 300 miles or more distant from the lands, and who, so far as the evidence shows, had ac- quaintance neither with the quality nor the value of the lands, be received as competent evidence? The majority opinion states that "paragraph 2 of the contract shows that before it was entered into plaintiff had caused to be made a careful examination of the lands and an appraisement thereof, which appraisement was marked op- posite each tract, and was accepted by the defendant and attached to the contract." It is true that the contract contains such clause; but it was executed on the 20th day of January, 1897, more than 10 years before the trial of this action; and it is difficult to understand how an appraisement made, not by respondent personally, but mere- ly under his supervision, could qualify him to testify as a competent witness as to the reasonable value of the lands at the time of trial. Even though he had seen the lands at the time of the appraisement, the change in value that had taken place in the period of time that had elapsed would make it necessary for him to show that he was still familiar with the prices of land in that locality. The fact that appellant accepted the appraisement made under respondent's di- rection at this remote date it must in fairness be admitted does not in any manner bind it to estimates made by him 10 years later; and in the changed view of the majority of the court in reference to respondent's right to fix prices his statement that the price offered was "acceptable" or advisable to accept adds not the slightest weight

to his testimony. While counsel for respondent does not still concede that it was necessary for him to show upon the trial that the purchasers offered were ready, able, and willing to make the purchase, the majority of the court in its opinion on rehearing concedes that it was necessary; but holds as it did with respect to proof of reasonable value that this fact is sufficiently shown by the evidence. The evidence in the record accepted by the majority of the court as sufficient for the purpose is that "the proposed purchaser for each tract of land made a binding written offer which defendant could enforce as soon as it accepted the said offer." Such evidence is, in my opinion, more entirely inadequate for the purpose than that offered to prove reasonable value. There can be no question, I think, but that appellant might without breach of its contract have refused to approve of an offer of purchase, though made at a reasonable price, when it knew the party making it to be entirely irresponsible finacially, in no condition to comply with the terms of sale, and against whom a claim for damages could not be enforced in case he failed to carry out the contract. It would not be contended for a moment, I think, that, if respondent made sales to persons of this character and appellant refused to carry them out, respondent could be said to have suffered damage by its failure so to do.

As said in a well-considered opinion of the Supreme Court of Colorado: "Refusal of the defendant to consummate the sale has not damaged the plaintiff unless he can show that if the defendant had carried out his contract the sale would have been made. How can he show this except by proving that at the time the contract was repudiated, as claimed, he was in a position to have effected a sale in conformity with the conditions under which the property was placed in his hands? Certainly he has not been prevented from earning his commission by the mere fact that defendant refused to sell the property unless he proves that, but for the conduct of the defendant, the sale would have been consummated. The refusal of the owner to sell according to contract does not prove, neither does it raise a presumption, that the alleged purchaser was able to purchase, but renders the owner liable to the broker for commissions, the same as though the sale had actually been effected, provided the latter establishes that the proposed purchaser was ready, able, and willing to make the purchase upon the terms stipulated by the owner to the broker. The repudiation of the contract by the defendant did not change the rule of law that the plaintiff must make out a prima

facie case, and establish a state of facts from which it appears that he had earned his commissions. In order to do this, even though the defendant had refused to sell, it was incumbent upon the plaintiff to prove that at the time or times when according to his claim he had the right under his contract with the defendant to effect a sale that he had a purchaser ready, able, and willing to take the property upon the terms and conditions under which the defendant had agreed to sell. * * * While it is true that there seems to be some conflict of authority on the question of whether or not it was necessary for the broker to prove the financial ability of the purchaser, in those cases where the owner refuses to carry out the contract of sale, we are of opinion that the great weight of authority and the well considered cases on the subject require plaintiff to make such proof, because he must show, before he is entitled to recover his commissions, that he performed those actions which, according to the contract of his employment, it is necessary for him to perform in order to become entitled to the compensation agreed upon." Colburn v. Seymour, 32 Colo. 430, 76 Pac. 1058. If the effect of the decision in this case is to establish as a rule of practice in the courts of this state that a broker claiming commissions, in cases in which the owner refuses to convey, may prove that he has procured a purchaser ready, willing, and able to make a purchase in any amount by simply producing a written offer to purchase, made by some unknown, obscure, and, perhaps, wholly irresponsible person, I believe that the innovation will be both dangerous and demoralizing. The courts of last resort of but one state Minnesota, have approved such practice. It has been squarely repudiated by the Supreme Court of Iowa, which announces a safer rule in better accord, not only with the general principles of evidence, but with the current of authority on this point, in these words: "We think that, in order to entitle plaintiffs to recover, something more than a mere offer to purchase should be shown by them. Such an offer could be made by one without means, and who is in no condition to comply with the terms of the sale, and against whom a claim for damages, resulting from a failure to perform the contract of purchase, could not be enforced. An offer from such an one ought not to be considered as constituting the performance of plaintiffs' undertaking to negotiate the sale of the land. As the pecuniary responsibility of the purchasers was or ought to have been known to plaintiffs, and as upon it depended the performance of their contract with defendant,

the burden rested upon them to show it. These conclusions are supported by Coleman's Ex'rs v. Meade, 13 Bush (Ky.) 358, and McGavock v. Woodlief, 20 How. 221, 15 L. Ed. 884." Iselin et al. v. Griffith, 62 Iowa, 668, 18 N. W. 302. Additional support to this rule is to be found in Flynn v. Jordal, 124 Iowa, 457, 100 N. W. 326; Leahy v. Hair, 33 Ill. App. 461; Zeidler v. Walker, 41 Mo. App. 118; Kimberly v. Henderson, 29 Md. 512; Nolan v. East, 132 Ill. App. 634.

Of the decision of the majority of the court as it now stands as compared with the conclusions announced on the first hearing of the case it may truly be said that the last state is worse than the first, in that the rehearing seems to have resulted only in the adoption of what I believe to be an unsound rule of practice, which, if sustained, can scarcely fail to be productive of confusion, if nothing worse, in future cases.