L. R. BAIRD, as Receiver of the First State Bank of Stanton, North Dakota, a Domestic Corporation, Respondent, v. C. G. FUERST, Appellant.

(235 N. W. 594.)

Opinion filed March 14, 1931.   Rehearing denied April 1, 1931.

*Thorstein Hyland,* for appellant.

*Schwartz & Sperry,* for respondent.

NUESSLE, J. This action is brought by the plaintiff Baird, as receiver of the First State Bank of Stanton, North Dakota, to recover on a promissory note. The defense is payment and discharge. The case was tried to the court without a jury. Judgment was ordered for the plaintiff. Defendant moved for a new trial on the ground of the insufficiency of the evidence to sustain the judgment. The motion was denied. This appeal is from the judgment and from the order denying a new trial. The sole question is as to whether the evidence is sufficient to sustain the judgment.

The defendant Fuerst executed and delivered to E. M. Serr his promissory note for $1,500, dated January 23, 1922, due January 23, 1923, with interest at the rate of 10 per cent per annum. It was an accommodation note, but complete and regular upon its face. Serr negotiated the note and ultimately on January 9, 1923, the First State Bank of Stanton purchased it in good faith for value and without notice. Serr was indebted in a large amount to the Stanton Bank. He had some real estate. On January 2, 1923, he gave the bank a contract for deed to this real estate, subject to encumbrances, as security for his indebtedness. Defendant's note above described fell due on January 23rd. It was not paid. On March 2nd defendant and Serr went to the bank and defendant executed a new note, dated January 23, 1923, for $1,650, being the amount of the former note with interest to the due date. This new note also was made payable to Serr. Serr indorsed it and turned it over to the bank. The present action is brought to recover on it. The bank surrendered the old note to Serr. As a part of this transaction the following writing, known in the record as Exhibit 1, was executed by the bank and Serr and delivered to the defendant:

"Stanton, North Dakota, March 2nd/1923.

"This agreement entered into this date, That the First State Bank will agree to turn over all such equity which may be realized out of the contract Dated Jany 2nd 1923 covering the SW¼ of Section 17 and the NW¼ of section 20 and the North Half of Section 19 Twp 146 R 85 Mercer County, so soon as the land can be sold then the First State Bank of Stanton ND is to take care of the note given by C. G. Fuerst to E. M. Serr, which note is being held by the First State Bank of Stanton at this time. It is the purpose of protecting C. G. Fuerst on

this note on any equity that may be realized out of any of the property of E. M. Serr.

> "First State Bank,
> "Stanton, N. Dak.
> "By John Pulles, Cashier
> "E. M. Serr."

Defendant testified he would not have executed the renewal note if the writing, Exhibit 1, had not been executed and given to him. The land described in Exhibit 1 is that covered by the contract delivered by Serr to the bank as security. At the time that Serr delivered the contract to the bank, and thereafter on March 2, 1923, this land was reasonably worth $14,400. The liens against the same aggregated more than $20,000. Serr's indebtedness to the bank was then more than $6,000. Thereafter and in 1925 the bank obtained title to the land in question by sheriff's deed through foreclosure of the third mortgage. In June, 1926, the bank sold the land to one Miller for $14,400. Miller executed a first mortgage to the Bank of North Dakota, the proceeds of which were used to absorb prior liens and taxes. Then he executed a second mortgage to one Halliday for $3,685. This was in renewal of a superior pre-existing mortgage. And finally he executed a third mortgage to the Bank of Stanton for the balance of the purchase price, to wit: $5,915. Thereupon the bank surrendered Serr's notes or gave him credit thereon in an aggregate amount of $5,915. This did not fully discharge Serr's indebtedness and there remained owing from him to the bank something more than $2,000. The note in suit was not surrendered to Fuerst. Nor does it appear that he ever demanded the same prior to the institution of this suit in January, 1929, although he had knowledge of the transaction whereby the land was sold to Miller. The note bears indorsements showing that the interest was paid in 1924, 1925, 1926 and 1927.

The defendant's contention is that under the terms of the writing, Exhibit 1, quoted above, and which was delivered to him at the time of the execution of the note in suit to Serr, he is entitled to have this note discharged and satisfied; that the bank when disposing of the land realized $5,915 therefrom and that so much of this amount as is required must be applied in payment and discharge of the note.

In Bronson v. Chambers, 51 N. D. 737, 200 N. W. 906, we had oc-

casion to construe a written instrument. What we there said is apt in the instant case:

"The writing is inartificially drawn. It is difficult to ascertain from its terms what the intent of the parties was at the time that it was entered into. It must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of the contract so far as the same is ascertainable and lawful. See § 5896, Compiled Laws 1913. 'When a contract is reduced to writing the intention of the parties must be ascertained from the writing alone if possible, subject, however, to the other provisions of this article (§§ 5895–5921, inclusive).' Comp. Laws 1913, § 5899. It may be explained by reference to the circumstances under which it was made and the matter to which it relates. Comp. Laws 1913, § 5907. And where a contract is ambiguous and it is impossible to ascertain the intention of the parties thereto from the writing alone, the subsequent acts of the parties showing the construction they put upon the agreement themselves may be looked to by the court and in some cases may be controlling. See Janssen v. Muller, 38 S. D. 611, 162 N. W. 393; Williston, Contr. § 623 and cases cited; 13 C. J. 542–546."

In this connection, see also, Hazelton Boiler Co. v. Fargo Gas & E. Co. 4 N. D. 365, 61 N. W. 151; Young v. Metcalf Land Co. 18 N. D. 441, 122 N. W. 1101; Halstead v. Missouri Slope Land & Invest. Co. 48 N. D. 220, 184 N. W. 284; Bailey v. Bailey, 53 N. D. 887, 207 N. W. 987. When we consider Exhibit 1 standing alone, it is difficult, if not impossible, to decipher from it the intent of its makers. But when, applying the rules of construction stated in the foregoing authorities, we look back to the circumstances existing at the time of its execution and consider the subsequent conduct of the parties with reference to the matter, there is little difficulty in ascertaining the purport and meaning of the writing. That is, that the bank upon the sale of the land is first to satisfy its own obligation due from Serr out of the proceeds, if that be possible, and if there remain any excess or equity, the property of Serr, that such excess is to be applied on the note in suit. This is the construction that was given the instrument by the trial court. It is incredible that the parties intended anything else. So far as the record indicates, Fuerst was solvent on March 2, 1923. The bank was the holder of the note in due course. Fuerst had no defense. Serr

owed the bank a large amount of money. It held Serr's contract as security for this indebtedness. We cannot believe the bank would surrender its rights under this contract in order to obtain a renewal of a good note against which there was no defense. Naturally, Fuerst was concerned in getting such security as he could for the obligation which Serr owed him on account of the note. The writing, Exhibit 1, concludes, "It is the purpose of protecting C. G. Fuerst on this note on any equity that may be realized on any of the property of E. M. Serr." The equity here referred to must have been the equity, if any, which would exist after satisfying Serr's obligation to the bank. The bank obtained title to the land through foreclosure of the third mortgage in 1925. In 1926 it sold the land to Miller. So far as appears Fuerst knew of this sale. Notwithstanding, nothing was said about an accounting. The bank continued to hold the note and no demand was made for it. Interest was paid on it in 1924, 1925, 1926, and 1927. The evidence amply sustains the findings and judgment of the trial court.

The judgment is affirmed.

CHRISTIANSON, Ch. J., and BURR, BIRDZELL and BURKE, JJ., concur.