ÆTNA LIFE INSURANCE COMPANY *v.* PHIFER.

Opinion delivered July 2, 1923.

1. INSURANCE—TOTAL DISABILITY—WAIVER OF PREMIUMS.—Where a policy of life insurance provided that, in case of total disability, "the company will, if all premiums previously due have been paid, waive the payment of all premiums falling due thereafter during such disability," the word "thereafter" refers to the beginning of the disability, which was the date of the injury, and not to the expiration of six months after final proof of the injury and disability, the period when payment was to be made, and payment of all premiums falling due after the injury was waived.

2. INSURANCE—TOTAL DISABILITY—COMMENCEMENT OF LIABILITY.— Under a policy obligating the insurer to pay a monthly sum to the insured in case of total disability "during the lifetime and during the disability of the insured," the liability of the insurer began with the injury and consequent disability.

3. INSURANCE—TOTAL DISABILITY DEFINED.—Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation; it is sufficient to prove that the injury wholly disabled him from the doing of all the substantial and material acts necessary to be done in the prosecution of his business.

4. INSURANCE—PERMANENT DISABILITY—JURY QUESTION.—In a suit under the permanent disability clause of a life policy, the question whether insured was totally and permanently disabled, under the evidence, was properly submitted to the jury.

5. INSURANCE—BREACH OF CONTRACT TO PAY MONTHLY INSTALLMENTS —DAMAGES.—Where, in a suit based on the permanent disability clause of a life policy, the insurer denied any liability under the policy, the insured, being permanently disabled, could treat the contract as breached and sue for the present value of the monthly payments agreed to be paid during disability, based on his life expectancy.

Appeal from Boone Circuit Court; *J. M. Shinn,* Judge; affirmed.

*Shouse & Rowland,* for appellant.

The demurrer to the complaint should have been sustained. It did not allege fulfilment of the conditions of clause 18, permanent disability clause. 83 Pac. 611; 82 Pac. 898; 121 Ark. 445; 88 Ark. 422; 88 Ark. 491. The loss of one foot was not sufficient to warrant a recovery. The court erred in not sustaining the special demurrer to the jurisdiction. The amount involved not sufficient to bring suit within circuit court's jurisdiction. The court likewise erred in giving instruction number 2, which was in conflict with terms of the policy. Clark on Contracts, 219; 13 C. J. 525; 84 Pac. 835; 118 S. W. 989; 182 S. W. 184. Instruction number 3 was erroneous. 13 C. J. 657; 181 Pac. 433; 106 Ark. 310; 54 A. M. S. 159. The court erred in not giving instructions requested by appellant. The judgment should be reversed and the cause dismissed.

*E. G. Mitchell* and *Sam Williams,* for appellee.

Appellant does not abstract the instructions given, nor the ones requested and refused, and this court will not review them for alleged errors. 98 Ark. 61. Under rule 9, the instructions not being abstracted, the jury is presumed to have been properly instructed. 98 Ark. 61, *supra;* 78 Ark. 374; 83 Ark. 356. Neither is motion for new trial abstracted. The question of appellee's permanent total disability was submitted under

proper instruction. 94 Ark. 417. When appellant refused payment within the time specified and denied liability, it waived proof of loss and also time for payment. 53 Ark. 494; 68 Ark. 8; 83 Ark. 126; 94 Ark. 227; 77 Ark. 27. Verdict is not excessive, and judgment should be affirmed.

HUMPHREYS, J. On May 27, 1922, appellee instituted suit against appellant to recover $2,000 damages for an alleged breach of the permanent total disability clause contained in an insurance policy issued by appellant to appellee on November 17, 1919, which clause is as follows:

"Six months after proof is received at the home office of the company, before the sum insured, or any installment thereof, becomes payable, that the insured has become wholly, continuously and permanently disabled, and will for life be unable to perform any work, or conduct any business for compensation or profit, or has met with the irrevocable loss of the entire sight of both eyes, or the total and permanent loss, by removal or disease, of the use of both hands, or both feet, or of such loss of one hand and one foot, all from causes originating after the delivery of this policy, the company will, if all premiums previously due have been paid, waive the payment of all premiums falling due thereafter during such disability, and, if such disability was sustained as above described, and before the insured attained the age of 60 years, the company will pay to the life beneficiary the sum of $10 for each thousand dollars of the sum herein described as the sum insured, and will pay the same sum on the same day of every month thereafter, during the lifetime and during the disability of the insured."

It was alleged in the complaint "that after the issuance and delivery of policy, and before the plaintiff attained the age of sixty years, and at a time when all premiums previously due had been paid, plaintiff sustained, by accident, on the 18th day of July, 1921, a

broken leg, which did wholly, continuously and permanently disable and will disable him for life, preventing him from performing any work, or conducting any business for compensation or profit; that, within the time required by the policy, plaintiff furnished proof of said injury and disability, on the ninth day of January, 1922, and the defendant refused to pay plaintiff's claim; that plaintiff is forty years of age, and has an expectancy in life of thirty years; that, because of the failure of defendant to pay plaintiff the sum of $10 per month per each thousand dollars insured, and by reason of the breach of contract, plaintiff is entitled to recover of defendant the sum of two thousand dollars, based upon the life expectancy of plaintiff."

Appellee filed a demurrer to the complaint upon the grounds, first, that the facts stated did not constitute a cause of action; and second, that the court had no jurisdiction to determine the cause. The demurrer was overruled, to which ruling appellant objected and saved an exception.

Appellee then filed an answer denying all the material allegations of the complaint, and interposed the further defenses that the policy had lapsed by a failure to pay the premium on Nov. 17, 1921, and that the suit was prematurely brought.

The cause was submitted to a jury upon the pleadings, testimony, and instructions of the court, which resulted in a verdict and judgment in favor of appellee for $1000, from which is this appeal.

Appellant first contends for a reversal of the judgment because appellee failed to pay the premium due November 17, 1921, claiming it was necessary, under the permanent total disability clause, to pay the premiums maturing during the six months period from the time final proof of injury was made, in order to prevent the policy from lapsing. The injury occurred on July 18, 1921. The final proof of injury was made on January 9, 1922. A premium of $84.12 matured, according to the

terms of the contract, on November 17, 1921. The correct interpretation of the permanent total disability clause contained in the policy and set out above is that the payment of all premiums falling due after the injury was waived. The particular language in the clause providing for a waiver is: ''The company will, if all premiums previously due have been paid, waive the payment of all premiums falling due thereafter during such disability.'' In the connection used, ''thereafter'' refers to the beginning of the disability, which was the date of the injury, and not to the expiration of the six months' period after final proof of the injury and disability. The purpose of the policy, evidenced by said clause, was to relieve the insured from burdens and to compensate him, in case of permanent and total disability, during the period of disability, meaning from the beginning of such disability.

Appellant next contends for a reversal of the judgment because nothing was due appellee under the terms of the permanent total disability clause when this suit was commenced, claiming that liability under the clause did not begin until six months after the final proof of the injury and disability was made. In other words, that liability did not begin when the injury and consequent disability occurred. The correct construction of the clause is that liability began with the disability. As stated above, and for the reasons given, the purpose of the policy was to compensate the insured during the period of permanent and total disability.

Appellant's next contention for a reversal of the judgment is that the undisputed evidence showed appellee had not become wholly, continuously, and permanently disabled. We think there is substantial testimony in the record tending to show that appellee was totally and permanently disabled, according to Mr. Kerr's definition of total disability when used in indemnity insurance policies. The definition given by him is as follows:

"Total disability does not mean absolute physical disability on the part of the insured to transact any kind of business pertaining to his occupation. It is sufficient to prove that the injury wholly disabled him from the doing of all the substantial and material acts necessary to be done in the prosecution of his business." Kerr on Insurance, §§ 385 and 386.

This definition was approved in the case of *Industrial Mutual Ind. Co.* v. *Hawkins,* 94 Ark. 417. The record reflects that appellee was a farmer 40 years of age, and not qualified to do any other kind of business; that both bones in his leg were broken about one-half an inch above the ankle, and protruded through the flesh something like two inches; that the bones were set by two physicians, but refused to knit; that 17 days thereafter they were set again by Dr. Frank Kirby of Harrison; that in December following an X-ray was made of the leg, which showed that neither one of the bones had united; that in February or March following the little bone united, and appellee gained some strength in the leg, but there was still a discharge from the wound and a tenderness in the bones when appellee threw his weight upon the broken limb; that at the time of the trial decayed bone was sloughing off and being discharged from the wound; that Dr. Hodgins Kirby examined the leg in February and expressed the opinion that there was a chance to make a very good foot if two operations were made upon it; that the first operation would involve a removal of the callus around the break and the second a severance of the bones by sawing them in two and inserting a piece of bone to unite them.

R. S. Krebbs, physician, examined appellee's wound in Febuary, at the request of appellant, found an ununited break in both bones, and pronounced his disability total and permanent, but stated that, if the bones had since united, he was mistaken about it being permanent.

Dr. Blackwood, physician and surgeon, in company with Drs. Kirby, Fowler, and Ruble, examined the

wound and made an X-ray picture of the leg the morning of the trial. The X-ray picture of the outside bone indicated a break and dislocation in four places, and also showed broken tissue. Their examination revealed a stiff joint and shortened leg. He pronounced the injury permanent, but gave it as his opinion that it would ultimately heal up and leave a normal leg, except for stiffness and length.

Dr. L. Kirby, physician and surgeon, who had been practicing since 1871, testified that the large bone or tibia of the right leg was one inch short, and the little bone or fibula pushed down, but not quite as short; that the bones were sufficiently united to support the weight of appellee's body; that the discharge was coming from a space where the bone was dead; that the injury was permanent so far as the leg was concerned and would interfere with appellee's occupation; that he did not know what was meant by a total disability, but, in his opinion, from all the facts, the foot was not wholly and permanently lost to appellee's use; that it would be better than an artificial foot.

The wounded leg was exhibited to the jury.

We think the evidence was sufficient to warrant a submission of the question to the jury whether appellee was totally and permanently disabled. That question was submitted to the jury under correct instructions. The only objections made by appellant to the instructions were that they did not embrace certain questions precedent to the recovery, which were unnecessary, according to our construction of the permanent total disability clause in the policy. The instructions requested by appellant and refused by the court were properly refused, because based upon an incorrect interpretation of the permanent total disability clause, as heretofore indicated.

Appellant's last contention for a reversal of the judgment is that, even if the policy had not lapsed on account of a failure to pay the November premium, and, even if the liability occurred on the date of the injury,

appellee was entitled to recover only $20 a month under the permanent total disability clause in the policy. The record reflects that appellant denied all liability under the permanent total disability clause aforesaid. When appellant received the proof of injury and disability, it wrote the following letter to appellee:

"Our medical board has considered this case very carefully, and is of the opinion that the insured has not necessarily become so disabled that he will never be able to perform any work or conduct any business for compensation or profit. In fact, there is a strong probability that he will receive such attention as will enable him to pursue some occupation. It would therefore appear that he does not come within the terms and conditions of the permanent total disability clause of this policy.

"It also appears from our records that this insurance lapsed by reason of the nonpayment of the November 17, 1921, premium, and is being continued on the extension feature. By referring to the permanent disability clause, it will be noted that, in order for it to be effective, all premiums should have been paid."

This letter evinced an intention on the part of appellant not to be bound by the terms of the contract, and was equivalent to a renunciation thereof. It stated in express words that the policy had lapsed. This denial of liability justified appellee, who was not in default, in treating the contract as breached and suing for gross damages, which he did. The measure of his damages was the amount appellant would have been required to pay him under the contract if it had not breached it, reduced to its present value. According to the mortuary tables introduced in evidence, appellee had an expectancy of 28.18 years. The payment provided for in the contract of the $2,000 policy was $20 a month. The present value thereof, according to appellee's expectancy, was more than $1000.

The judgment therefore was not excessive, and is affirmed.

McCULLOCH, C. J., dissenting.

DISSENTING OPINION.

McCULLOCH, C. J. I can only discover in this contract one to pay money in installments, and a refusal to pay each installment created a separate cause of action, but not a right of action for future installments. The breach of the contract was in refusing to pay, and the fact that there was a total denial of liability did not accelerate the right of action for future installments. The rule on the subject of remedies on contracts to pay money in installments is stated as follows:

"At common law a contract to pay a sum certain in installments at different times was considered an entire contract upon which no action of debt could be brought until all the days of payment had elapsed. After the action of assumpsit was introduced, it was held at first that, although, where the contract was to pay by installments, assumpsit would lie on default of the first payment, yet plaintiff was obliged to demand his whole damages, even where only one of the several installments was payable, on the ground that the contract was entire, and that no new action could be maintained. Subsequently, however, it was determined that in assumpsit, on such a state of facts, an action might be brought for such sum only as was due when the action was brought, and that plaintiffs should recover damages accordingly and have a new action as the other sums became due *toties quoties*. The great weight of modern authority is to the effect that a contract to do several things at several times is divisible in its nature because, although the agreement is in one sense entire, the performance is several, and an action will lie for the breach of any one of the stipulations, each of them being considered in respect to the remedy as a several contract." 1 C. J., p. 1112.

The text is supported by numerous authorities, among which may be cited the following: *Peurrung* v. *Carter-Crume Co.*, 110 Fed. 107; *Colwell* v. *Fulton*, 117 Fed. 931; *Ryall* v. *Prince*, 82 Ala. 264; *Higgins* v. *San*

*Diego Savings Bank,* 129 Cal. 184; *Puckett* v. *National Annuity Assn.,* 134 Mo. App. 501; *Thetford* v. *General Assurance Corporation,* 140 Mo. App. 254.

The Missouri cases cited above are identical with the case at bar in that they involve suits on accident policies of insurance, the benefits being payable in installments, and the court held that there could only be a recovery for installments due, though all of the matured installments could be joined in one action.

In *Badger* v. *Titcomb,* 15 Pick. (Mass.) 409, the doctrine of the above text is announced, and the opinion shows that the right to recover all of the installments was first announced by the English court on the ground that the contract was entire, and failure to make the first payment constituted a breach of the whole contract, but it is shown by the Massachusetts court that this doctrine was repudiated in later English cases, and the authority of the first case has never been recognized. This view is in line with our own cases. In *State* v. *Scroggin,* 10 Ark. 326, the question of recovery on future installments was not involved, but it was held that the matured installments could be joined in one action for the purpose of giving the circuit court jurisdiction.

The conclusion of the majority is, I think, in direct conflict with the decision of this court in *Van Winkle* v. *Satterfield,* 58 Ark. 617, where it is held that a discharged employee whose wages were, under the contract, due in installments, could not sue for future installments. In the present case it is shown that there were sufficient installments due to bring the amount within the jurisdiction of the circuit court, but I am of the opinion that, under the authorities cited above, appellee was only entitled to recover the installments due up to the time of the trial, and that successive actions could be brought for future installments. As stated by Judge BATTLE, speaking for the court in the Van Winkle case, *supra,* "he might, after recovery of the judgment, die before

his term of service expired.'' So, in the present case, appellee may recover from his disability before he is entitled to demand payment of the full amount that has been awarded to him in this judgment.