Equitable Life Assurance Society of United States
v. Pool.

4-3421

Opinion delivered April 23, 1934.

*McKay & McKay,* for appellant.

*J. F. Quillin* and *T. B. Vance,* for appellee.

Johnson, C. J.   This action was instituted by appellee against appellant in the circuit court of Miller County, seeking recovery upon a certain policy of insurance of date December 27, 1926.   Appellee alleged that, during the effectiveness of said policy, he was totally and permanently disabled prior to attaining the age of 60 years, and that appellant was due him under said contract the sum of $10 per month for the balance of his life; he further alleged that, by the terms of said contract of insurance, appellant agreed to waive all future premiums after total and permanent disability suffered; that appellant had breached its contract by failing and refusing to pay monthly installments on and after April 10, 1933; and by then and there demanding payment of the June, 1933, premium and by thereafter, on July 27, 1933, asserting and declaring a forfeiture of said policy for nonpayment of the June, 1933, premium.

Appellant answered the complaint and denied liability because of total and permanent disability, and its prayer was that the complaint be dismissed and that it have judgment for its costs.

The testimony introduced upon trial tended to establish the following facts:

That appellee suffered total and permanent disability prior to January 1, 1932, which was recognized by appellant by making monthly payments according to the terms of the policy up to and until April, 1933; that on the 10th day of April, 1933, appellant notified appellee that on and after that date it would discontinue payments upon the total and permanent disability clause of said policy of insurance and that it would not waive the payment of premium on said policy which would mature June 27, 1933. Appellee refused to pay the June, 1933, premium on said policy, and thereafter, on July 27, 1933, appellant notified appellee that his policy of insurance had lapsed because of nonpayment of the June, 1933, premium, and thereafter this suit was instituted.

But two contentions are urged upon us by appellant for reversal: first, that, under the facts and circumstances here presented, appellant did not renounce or repudiate its contract, therefore its liability is limited to monthly payments as they accrue according to the terms of the policy; secondly, that the verdict of the jury and judgment of the court are excessive.

Adverting to the first contention, it may be said that, according to the uncontradicted evidence, appellant, through its local agent, on July 27, 1933, notified appellee that his policy of insurance had lapsed for nonpayment of premium on or prior to that date. This assumed position by appellant was an unequivocal renunciation and repudiation of its contract of insurance. This exact question was so decided by us in *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335. In the Phifer case, just cited, the insurance company wrote Phifer a letter in which it stated:

"It also appears from our records that this insurance lapsed by reason of the nonpayment of the Novem-

ber 17, 1921, premium, and is being continued on the extension feature. By referring to the permanent disability clause, it will be noted that, in order for it to be effective, all premiums should have been paid.''

In disposing of the contention there made as here, we said: ''This evinced an intention on the part of appellant not to be bound by the terms of the contract, and was equivalent to a renunciation thereof. It stated in express words that the policy had lapsed. This denial of liability justified appellee, who was not in default, in treating the contract as breached and suing for gross damages, which he did.''

It therefore certainly appears that the facts of the instant case come squarely within the rule as announced in the Phifer case and must be governed by it.

Appellant contends, however, that the rule as announced in the Phifer case has been modified or impaired by the doctrine as announced in the more recent case of *Mutual Life Ins. Co.* v. *Marsh,* 186 Ark. 861, 52 S. W. (2d) 433, and that the facts and circumstances of the instant case fall within the rule as announced in the Marsh case. To this we cannot agree. The disposition of the Marsh case was bottomed upon Richards' Law of Insurance, 4th Edition, and we quoted from § 342 thereof in part as follows: ''And if with knowledge of the facts (referring to facts in reference to the breach of contract by the insurer) the insured elects to continue with the contract, he cannot subsequently exercise a second and inconsistent election to treat it as abrogated.'' In application of the rule of law thus stated to the facts as they appeared in the Marsh case, we stated: ''In the instant case there was not a refusal to carry out the contract and a renunciation of the agreement, but, in the course of the correspondence between the parties, when default was first made in the payment, there was simply the contention that, under the existing facts, the insured for the time being was no longer entitled to the monthly benefits. Recognizing that there had been no repudiation of the contract, appellee paid the premium January 25, 1932, and testified that the policy was still in effect, and in his complaint alleged that the contract

had been put in force in January, 1922, and had remained in full force and effect thereafter, and was in full force and effect at the time of the filing of the suit. The appellant, in its answer, expressly disavowed any repudiation, but affirmed the contract, and merely contended that under its terms the appellee was not entitled to the monthly benefits. This makes this case unlike that of *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335, relied upon by appellee. In that case the plaintiff was allowed to recover the present value of the future benefit installments because the court found that there had been a total repudiation of the contract in that the insurer, by letter, had in express words denied liability on the claim that the policy had lapsed. The court said: 'This letter evinced an intention on the part of the appellant not to be bound by the terms of the contract, and was equivalent to a renunciation thereof.' ''

Thus it appears that the Marsh case was decided and disposed of upon the principle of estoppel. Marsh paid the January, 1932, premium upon his policy at a time when he had full knowledge that the insurer was denying liability for monthly installments. Marsh, by voluntarily paying the January, 1932, premium on his policy of insurance, thereby elected to waive the insurance company's breach of the insurance contract in failing to pay the monthly installments. As thus construed, the Marsh case is sound in principle and does not conflict with the rule as announced in the Phifer case and the many other cases decided by us upon this subject.

It is not necessary to undertake a defense of the doctrine as announced in the Phifer case, but in passing it may be said that it is supported by the great weight of American authority. Richards' Law of Insurance, expressly so states, and this authority was cited with approval by us in the Marsh case. Not only is a renunciation or repudiation of the contract inferred from the unlawful or unwarranted lapse of the policy, but the refusal of the insurance company to accept a premium thereon when due is a renunciation of the contract. Richards' Law of Insurance states the principle as follows:

"Especially is the rule clear where the insurer not only repudiates the contract by his declaration that he will not pay in the future, but also violates a present obligation under the contract by refusing to accept a premium when due."

Sometime subsequent to the Marsh case we again reviewed the authorities on this question, and expressly held that, where the insurer denies liability for disability benefits on the ground that the policy lapsed for default in payment of premiums, such renunciation of the contract authorized the insured to sue for gross damages and recover the present value of future installments. This holding gave full effect to the doctrine as announced in the Phifer case and other cases on the subject and clearly evinces the intentions of the court to adhere to its previous holding. *Ætna Life Ins. Co.* v. *Davis*, 187 Ark. 398, 60 S. W. (2d) 912. The unlawful and unwarranted demand for payment of premiums when none is due in fact and the lapse of the policy on refusal to pay such demand is equally as reprehensible as the refusal to accept a premium when due and lapse the policy because thereof.

Appellant's second contention, that the verdict of the jury and the judgment of the court are excessive, is bottomed upon the argument that appellee, having been determined totally and permanently disabled, cannot be presumed to live the full expected time as measured by the American Experience Table of Mortality. This experience table of mortality was introduced in evidence along with other facts and circumstances as tending to show appellee's expectancy of life, and we have many times held this table competent testimony. In addition to this table, Dr. Tyson, a witness for appellee, testified that appellee's injuries would not necessarily shorten his life, and this evidence was corroborated by Dr. Kitchens. From the testimony thus adduced, the jury determined that appellee would live out the usual expectancy of life, and this finding of fact is supported by the evidence. Under long established rules of this court, we cannot substitute our judgment for that of the jury.

No error appearing, the judgment is affirmed.

SMITH, McHANEY and BUTLER, JJ., dissent.

BUTLER, J., (dissenting). The dissenting opinion filed by Mr. Justice Smith in No. 3427, *Metropolitan Life Ins. Co.* v. *Harper, post* p. 170, in which Mr. Justice McHaney and I fully concur, in many essential particulars states the reason which governs the dissent in the instant case. But, in order that our views may be fully understood, it is necessary to state certain undisputed facts which appear in the record and which are not stated in the opinion of the majority.

The policy of insurance involved in this action is an ordinary life policy by which the sum of $1,000 is to be paid to a named beneficiary in the event of the death of the insured, included in which is a clause for the payment of certain monthly sums upon the insured's becoming totally and permanently disabled at a time when the policy is in full force and effect. It was upon this clause that this action is based. In 1932 a claim was made by the insured for monthly payments because of total disability. This claim was accepted by the insurance company and payments were made beginning with the month of January, 1932, and continuing to April, 1933. The clause relating to disability contained a provision by which the insurance company reserved the right to re-examine into the condition of the insured at stated intervals to determine whether the disability for which it was making payments still existed. Acting under this provision, in March, 1932, the company requested the insured to be examined by the company's physician, Dr. Youmans, in the town of Lewisville, Ark. The insured complied with this request, the examination was accordingly made, and the physician reported to the company that at that time the insured was normal and suffering from no disability. Thereupon, on April 18, 1932, the company addressed a letter to the insured, effective as of April 10, in which he was notified that it then appeared that he was no longer totally and permanently disabled, and that therefore no further premiums would be waived, and no further disability installments paid; it advised that the next premium would be due on June 27, 1933, and that this would have to be paid. On May 2, 1933,

J. F. Quillin, as attorney for the insured, wrote the company acknowledging the receipt of its letter of April 18, advising that, under the Arkansas decisions, "a breach of this kind of contract entitled the insured to immediately recover from the insurer the present value of future installments based upon his life expectancy. Mr. Pool's expectancy is now 28.18 years and the present value of the future installments commuted at 6 per cent. per annum is $1,620. The purpose of this letter is to make formal demand upon you for the payment of the amount of $1,620 as the sum now due under the contract following the breach by you as evidenced by your notice, and to inform you that, in the event of your failure or refusal to honor this demand, suit will be filed in the circuit court of Miller County, Arkansas, for recovery."

The company answered this letter on May 8, 1933, acknowledging receipt of the letter of May 2, taking issue with the attorney as to the effect of the Arkansas decisions and concluding with this paragraph: "There has been no breach of the contract as stated in the second paragraph of your letter, and, of course, the demand by you in your third paragraph is absolutely refused." The attorney for the insured answered this letter, stating that, in view of the expression contained in it to the effect that the contract had not been repudiated, formal demand was made for the monthly benefits since April 10, 1933, and inclosed a statement of Dr. J. E. Tyson to substantiate the claim that there had been no break in the disability of the insured, and that his payments had been wrongfully discontinued. The letter stated also that if it was desired that regular forms be filled out the insured would immediately have them completed by physicians who were disinterested, upon receipt of same.

On July 1, 1933, the insured's attorney addressed another letter to the company enclosing report of Dr. Tyson and again demanding immediate payment of the disability benefit. That letter was answered by the company on July 8, acknowledging receipt of the letter of July 1, and advising that the claim was receiving the attention of the company. On July 13 the cashier of the company wrote the insured calling attention to a

letter written on June 22 asking him to again call upon Dr. Youmans of Lewisville for an examination in connection with his disability claim, and asking that he do so at his earliest convenience.

It was agreed at the trial of the case that the plaintiff was examined by Dr. Tyson of Texarkana and reports of the finding on said examination furnished to the defendant company, together with demand for the payment of the benefits which had accrued; that the defendant requested the plaintiff to call at the office of Dr. Kittrell of Texarkana for an examination; that plaintiff did not find Dr. Kittrell at his office; that later on the defendant requested the plaintiff to return to Dr. Youman's office at Lewisville for further examination, which the plaintiff did not do on account of the reasons set out in his letter, as follows:

"Your letter of July 14 was received.

"In regard to my examination I was required to go to Dr. Kittrell at Texarkana. I went there last month but Dr. Kittrell was not in town. Dr. Youmans is at Lewisville. That is in another county. I do not feel able to make another trip over there. I have submitted statements from Dr. Beck's Clinic to the Home Office stating my condition. I do not feel it necessary for me to make another long trip to Lewisville before Dr. Youmans. If the company wants to do the right thing about my case they already have statements enough to carry out their contract."

It was further agreed that the defendant company thereafter requested the insured to call at the office of Dr. Kittrell, which he did on September 12, 1933, for further examination. It was also agreed that, upon the proof submitted to the defendant company by reason of the examination referred to by Drs. Youmans and Kittrell, the defendant company denied liability on the ground that the plaintiff was not totally and permanently disabled within the terms of the policy, and that it thereafter gave notice that the plaintiff, to keep the policy in force, must pay the premiums as provided therein; that the plaintiff did not pay the premiums, and that thereafter and subsequent to July 27, 1933, the company noti-

fied its agent, G. M. McKnight, at Lewisville, that the policy had lapsed for the failure to pay the premium of June 27, and that McKnight advised the insured of the receipt of the notice and that he secure a re-instatement of the policy, and that he write the company what would be necessary to secure the same.

On August 8 this suit was brought, the complaint alleging that, while the plaintiff was totally and permanently disabled, the insurer, on April 18, 1933, without cause ceased the payment of the monthly disability and on that date notified the plaintiff that on June 27, 1933, a premium would become due on said policy, which must be paid to prevent a lapse of said policy; that, immediately after the receipt of said notice, plaintiff made proof that his said disability continued to exist, and since then has continued to make proof thereof and has made repeated demands for the payment of the monthly disability; "and that the defendant, without authority and in violation of the terms of said contract, cancelled, repudiated and breached said contract of insurance, denied all liability thereunder for such disability, and notified the plaintiff that said policy was after said date no longer in force." In its answer the company denied that the plaintiff was totally and permanently disabled within the meaning of the policy in the year 1931, or thereafter, or that he was then totally and permanently disabled. It denied that it had without cause and without authority ceased payment of the monthly disability payments, alleging as a reason for the discontinuance of same the examination of Dr. Youmans and his report and denying that it had repudiated the contract, but, on the contrary, alleged that it had recognized that the policy was in full force at the time demand was made upon it for payment of the monthly benefits accruing after April 10, and admitted that if the plaintiff was totally and permanently disabled on April 10, 1933, at the time it served notice on the plaintiff as alleged in the complaint, said policy was then, and still is, in full force and effect. "It denies liability to the plaintiff solely on the ground that he was on April 18, 1933, and still is, able to engage in an occu-

pation and perform work for compensation of financial value.''

From these undisputed facts it is clear that the insured based his claim that the contract had been breached on the ground of the failure and refusal of the insurer on and after April 18, 1933, to pay the monthly disability benefit at a time when his total and permanent disability continued. It is also manifest that this is the identical position taken by the insurer, both in its letters and in its answer.

The majority have improperly based the decision of this case on the letter of July 27 notifying the agent of the lapse of the policy for the nonpayment of the June premium. This was not the ground upon which the monthly payments were discontinued, but on the belief and contention that there was no longer any disability entitling the insured to further payments within the meaning of the policy. The rights of the parties are properly to be determined by this contention and were fixed when it was made. It was a question, (if the terms of the contract are not to be brushed aside as unimportant), which the insurer had a right to raise and to have a reasonable time in which to investigate. If the insurer was wrong in its assumption, then it would owe whatever payment might be in arrears, the premiums would not be due as claimed and there would be no lapse of the policy. In the event of suit to settle that question, if the jury should determine adversely to the contention of the insurer, it would be liable for the monthly payments in arrears and to a penalty and a reasonable attorney's fee. This I conceive to be the true and just measure of the liability of the insurer.

When the insured, without giving the insurer a reasonable opportunity to investigate his claim of continuing disability, filed this suit alleging a renunciation and breach of the contract, the insured answered expressly disavowing any renunciation, but interposed as a defense the same reasons it assigned to the insured in its letters and submitted that question for decision to the court. The retroactive effect assigned by the majority to the letter of July 27 advising of the lapse for nonpay-

ment of the June 27 premium is not to be justified by any logical process of reasoning, nor is it supported by authority. This court, in the recent case of *Missouri State Life Insurance Company* v. *Foster,* 188 Ark. 1116, 69 S. W. (2d) 869, said: "We are irrevocably committed to the doctrine that when liability attaches no subsequent act of the parties will effect a forfeiture of the policy unless the contract of insurance in definite and explicit terms so provides."

The doctrine announced in the case of *Ætna Life Ins. Co.* v. *Phifer,* 160 Ark. 98, 254 S. W. 335, cited in the majority opinion, has no application to the case at bar. In that case there was a distinct renunciation of the contract of insurance because of nonpayment of premium occurring before the existence of the disability of the insured for which payment was demanded. This ground for refusal to make payments was reaffirmed in the answer of the insurer and pleaded as one of its defenses to the insured's action. This was identically the situation in the case of *Ætna Life Ins. Co.* v. *Davis,* 187 Ark. 388, 60 S. W. (2d) 912, cited and relied upon in the majority opinion. The issue tendered in those cases was to the effect that there was no contract of insurance in existence at the time the insured became disabled, and therefore there was not only a disavowal of liability but an absolute and explicit renunciation of the contract, which was held to bring the cases within the rule announced in *Roehm* v. *Horst,* 178 U. S. 1, 20 S. Ct. 780, and our own cases which follow and cite that case.

I submit that, in the discussion by the majority of the late case of *Mutual Life Ins. Co.* v. *Marsh,* 186 Ark. 861, 56 S. W. (2d) 433, both its letter and spirit are misunderstood and misinterpreted. As we understand the contention of the appellant, there is no contention that this case modifies the rule announced in the Phifer and Davis cases. Indeed, it does not, but is in harmony with and complements that rule. The majority opinion incorrectly assumes that the decision in the Marsh case was bottomed on the excerpt from Richards on the Law of Insurance set out in the opinion. It also erroneously states that it (the Marsh case) was "decided and dis-

posed of upon the principle of estoppel.'' These errors on the part of the majority will clearly appear from a casual inspection of the opinion in the Marsh case. The rule upon which the decision was based is found in the first paragraph of § 342 of Richards on Insurance as follows:

"By the weight of authority, if the insurer renounces the continuing contract of insurance, upon his part, and unequivocally refuses in advance of its maturity to perform it, the insured may at his option take the insurer at his word. The insured is then relieved of the duty of further performance on his part, and may maintain an action at law for damages, before the specified date of expiration.'' The remainder of that section, which is set out, and from which the excerpt quoted by the majority is taken, is merely explanatory and illustrative of the rule.

For the application of that rule reference was made to *Kirschman* v. *Tuffli Bros.*, 92 Ark. 111, 122 S. W. 239, approving the rule as announced in *Roehm* v. *Horst, supra.* The rule laid down in Richards on Insurance, *supra,* approved and applied in the cases cited, is identical to that applied in the Phifer and Davis cases, *supra,* and in many decisions of this court cited in the Marsh and Davis cases.

In *Mutual Life Insurance Company* v. *Marsh, supra,* the decision of the court was not based upon the doctrine of estoppel, as is perfectly apparent from an investigation of that case; it was placed upon the ground that there had been no repudiation of the contract but rather a reliance upon its terms, and that the conduct of the insured was not such as to estop him from pleading a renunciation, but, on the contrary, was a recognition that there had been no repudiation by the insurer of the contract.

The practical effect of the decision in the instant case and in the very recent case of *Metropolitan Life Ins. Co.* v. *Harper, supra,* is that an insurance company cannot question the claim made by an insured to the effect that he is totally and permanently disabled and have a reasonable time to investigate the same on pain

of being deemed to have renounced the contract and thereby subject itself to a judgment for a gross sum for anticipatory damages. On the facts of these cases, as I interpret them, that is just what this court is holding, and, to be consistent, it should overrule both cases cited and relied on in its opinion and all our other decisions dealing with anticipatory damages and restate the law on that subject.

Justices Smith and McHaney authorize me to say that they concur in the views I have expressed and join in the dissent.