[No. 35701.     Department One.     November 16, 1961.]

CHARLES V. FANNING, *Respondent,* v. GUARDIAN LIFE INSUR-
ANCE COMPANY OF AMERICA, *Appellant.*\*

\*Reported in 366 P. (2d) 207.

*Parker & Parker* and *Preston, Thorgrimson, Horowitz, Starin & Ellis,* for appellant.

*LaLonde & LaLonde* and *Davies, Pearson, Anderson & Pearson (John L. LaLonde* and *Wayne J. Davies,* of counsel), for respondent.

WEAVER, J.—This action is based upon a breach of contract of an alleged policy of accident insurance. Defendant Guardian Life Insurance Company of America denied liability. The jury returned a verdict for $27,730 in favor of plaintiff. The evidence, which the jury was entitled to believe, discloses (a) that plaintiff was totally and permanently disabled by an accident, (b) that he incurred more than $2000 medical expense, and (c) that $25,730 would be the cost of a $100-a-month annuity—the amount provided by the alleged policy—for the life expectancy of a 42-year-old male.

Viewed in the light most favorable to plaintiff, the record supports the following facts:

Since 1956, Verne Lester has been a soliciting agent for a life insurance company that did not write accident insurance. January 2, 1959, Lester entered into an "Agreement of Agency" with defendant Guardian Life Insurance Company of America through Mr. Robert Preble, its general agent in Aberdeen, Washington. The general agent gave Lester a broker's manual, a sales folder, and application blanks for defendant company's "Preferred Accident and Health Insurance." Mr. Lester was not instructed in the use of a

conditional binding receipt that was attached to the application blank.

Prior to soliciting plaintiff, Mr. Lester secured applications for accident insurance from three loggers. The policies were issued by defendant company.

January 28, 1959, Mr. Lester solicited and received from plaintiff, a logger, an application for accident insurance that does not indicate the date the insurance became effective. It does, however, disclose that the applicant paid the company's representative $47.90, the amount of the semiannual premium. In truth, plaintiff paid only $40, for, as several witnesses testified, Mr. Lester did not have change for three $20 bills tendered by plaintiff; consequently, Mr. Lester issued the following receipt:

"For Semi Ann Prem    1-28-1959
"Received from Charles Fanning
"Forty         00/100 Dollars
"On Accident policy; balance
"Seven dollars & 90/100  Due
"$40.00     Verne Lester"

Witnesses testified Mr. Lester told plaintiff that he was covered by accident insurance "as of then."

Attached to the application was a "Conditional Binding Receipt" bearing the same number as the application. The receipt provided, in part:

"Received $47.90 on account of the first premium for the proposed insurance on Charles Fanning, for which an application bearing the same number as this receipt is made this day to The Guardian Life Insurance Company of America, 50 Union Square, New York 3, N. Y. This payment is made and accepted subject to the following conditions:

"1. If, on the date of this payment, the proposed Insured, in the opinion of the Company's authorized Officers, was insurable and acceptable on any basis under its rules and practices, the Policy or Policies issued will be dated as of the date of this payment, or Jan. 28, 1959, whichever is the later; otherwise the Company shall have no liability except for the return of this payment to the applicant upon surrender of this receipt.

" . . .

"This receipt must not be detached unless a binding payment is made."

Mr. Lester had plaintiff sign the application. The "Conditional Binding Receipt" was detached, although *it was not delivered to plaintiff*; thus, it did not give notice to plaintiff of its terms. The soliciting agent delivered the application, with the full semiannual premium of $47.90, to the general agent, who forwarded the application and premium to the home office of defendant. They were received February 5, 1959.

February 10, 1959, plaintiff was injured in an accident that totally and permanently disabled him.

February 19, 1959, defendant notified its general agent in Aberdeen, by telegram, that it declined plaintiff's application for insurance. Upon defendant's request, the Aberdeen agency sent the "Conditional Binding Receipt" to the home office for cancellation. It was received February 25, 1959.

■ Defendant assigns error to instruction No. 8, which states:

"An insurance company is bound by all acts, contracts or representations of its agent which are within the scope of his apparent authority, notwithstanding the fact that they may be in violation of private instructions or limitations upon his authority, unless the person with whom the agent is dealing has either actual or constructive knowledge of the agent's limitation of authority.

"If you find that Mr. Lester acted in such a way as to lead plaintiff to believe he was protected by the insurance upon payment to Mr. Lester, and if you find that the plaintiff herein acted in good faith and as a reasonable man in assuming that Mr. Lester had authority to sell plaintiff accident insurance protecting the plaintiff from the date that plaintiff made payment to Mr. Lester, and did not have actual or constructive notice that Mr. Lester had limited authority to bind, then your verdict shall be for the plaintiff."

We do not find the instruction erroneous. It fits the definition found in Restatement, Agency (2d) § 8:

"*Apparent Authority.* Apparent authority is the power to affect the legal relations of another person by transactions

with third persons, professedly as agent for the other, arising from and in accordance with the other's manifestations to such third persons.

" . . .

"Comment c. *Belief by third person.* Apparent authority exists only to the extent that it is reasonable for the third person dealing with the agent to believe that the agent is authorized. . . ."

The evidence, when reviewed in the light most favorable to plaintiff, discloses that defendant furnished Mr. Lester with application forms, rate book, and sales material through its general agent; that the agent solicited applications, collected first premiums, had authority to issue "conditional binding receipts," delivered policies and drafts in payment of claims, and, in the instant case, wrote the letter advising plaintiff that the company denied liability.

Under these facts, we believe instruction No. 8 proper, for, as this court said in *Starr v. Mutual Life Ins. Co.,* 41 Wash. 228, 233, 83 Pac. 116 (1905):

" . . . If insurance companies deem it necessary for their protection to limit the operation of their contracts of insurance from the date of issuance of the policy, or from any other date, it is very easy for them to say so, and to bring knowledge of that fact home to those with whom they are dealing. In this case, we hold that the receipt given constituted a present contract of insurance, subject to be continued or terminated by the approval or rejection of the application, and that the insured was not affected by any want of authority in the soliciting agent to enter into such a contract, unless notice of such want of authority was brought home to him."

Inherent in the $27,730 jury verdict in favor of plaintiff are the following facts:

(a) plaintiff suffered an accidental injury February 10, 1959, so that he was totally and permanently disabled on April 22, 1960, the date of the verdict;

(b) the accident insurance policy (the form of which was pleaded and proved) is an existing, contractual obligation of defendant for the benefit of plaintiff;

(c) $2000 of the money judgment represents plaintiff's

medical expenses covered by the accident insurance policy; and

(d) $25,730 of the judgment represents "the amount of money presently required to pay to plaintiff the sum of $100 a month for his life expectancy."

Defendant's principal assignments of error are directed to instruction No. 9:

"If your verdict is for the plaintiff and if you find that plaintiff is permanently totally disabled as defined in the contract of insurance and such disability was caused by accident, then you shall return a verdict allowing plaintiff in one lump sum *the amount of money presently required to pay to plaintiff the sum of $100.00 a month for his life expectancy.*

"In addition to such sum of money, you may return a verdict for plaintiff to reimburse him for medical, doctors and hospital expenses reasonable incurred as a result of this accident, not to exceed the sum of $2,000.00.

"By giving you this instruction on damages, the court does not mean to imply that you must return a verdict for the plaintiff.", (Italics ours.)

and to the court's refusal to give that portion of defendant's requested instruction No. 12 limiting money judgment (exclusive of medical expenses) to:

". . . $100.00 per month for such period of time you find, by a fair preponderance of the evidence, that the plaintiff was wholly and continuously disabled from performing every duty pertaining to his occupation *between the time commencing seven days after said injury up to the date of your verdict.*" (Italics ours.)

■ When plaintiff became totally and permanently disabled by reason of the accident, the contract of insurance became unilateral; plaintiff had fully performed. He was exempt from future performance, so far as premium payments were concerned. The fact that the policy provided:

"The Company at its own expense shall have the right and opportunity to examine the person of the Insured when and as often as it may reasonably require during the pendency of a claim hereunder . . ."

". . . is too trivial and inconsequential to be regarded as an unperformed obligation on the part of the in-

sured. . . ." (*Cobb v. Pacific Mut. Life Ins. Co.*, 4 Cal. (2d) 565, 573, 51 P. (2d) 84 (1935).)

and is not an exchange for defendant's promise or performance.

The defendant's denial of the existence of the contract of insurance amounted to a total breach. Thus, we are presented with the question of whether the doctrine of anticipatory repudiation as a total breach of contract is applicable to a unilateral contract of insurance that provides payment of periodic installments, so that the insured is entitled to a money judgment for the *present* value of future payments, based upon his life expectancy.

■ The factual pattern in *Trompeter v. United Ins. Co.*, 51 Wn. (2d) 133, 316 P. (2d) 455 (1957), is somewhat similar to the instant case. The court discussed the doctrine of anticipatory repudiation as a *total* breach of contract and the allowance of future damages before the time for performance had arrived. A lump-sum verdict, based upon an accident insurance policy providing for monthly payments, was reversed, the court saying:

" . . . While the refusal to pay the amounts due was a breach, *it was not a complete repudiation* which entitled respondent to recover at once, in a lump sum, all future installments." (Italics ours.)

Most jurisdictions have accepted the doctrine of breach by anticipatory repudiation in *bilateral* contracts. In *McFerran v. Heroux*, 44 Wn. (2d) 631, 640, 269 P. (2d) 815 (1954), this court said:

" . . . This court has held on numerous occasions that, where a party to a contract repudiates the contract, either by a positive refusal to perform before performance is due or by putting it out of his power to perform, an action for damages brought immediately is not premature. *Casey v. Murphy*, 143 Wash. 17, 253 Pac. 1078; *Hunter v. Wenatchee Land Co.*, 50 Wash. 438, 97 Pac. 494."

We are mindful that there are many decisions on both sides of the question[1], but a majority of the jurisdictions

---

[1] Annotations: "Remedy and measure of recovery where insurer breaches its contract to pay indemnity periodically." 81 A. L. R. 379 (1932); 99 A. L. R. 1171 (1935).

refuse to allow recovery for breach by anticipatory repudiation of a unilateral contract or of a bilateral contract that has become unilateral.

In *Trompeter v. United Ins. Co., supra,* this court stated:

"The cases are collected, and the law is well summarized, in 21 Appelman Insurance Law and Practice 358, § 12582, as follows:

" 'The great majority of decisions permit recovery under a disability policy only of installments accrued and unpaid at the time of commencement of the action; *this rule applying even though the insurer may have denied liability* and the insured sought recovery of all damages on the theory of anticipatory breach.' " (Italics ours.) (p. 141)

Restatement, Contracts (1948 Supp.) § 318, definitely eliminates unilateral contracts and bilateral contracts that have become unilateral from the doctrine of anticipatory repudiation as a total breach by stating:

"In the case (1) of a bilateral contract that has not become unilateral by full performance on one side, and (2) of a unilateral contract where the agreed exchange for the promise or for its performance has not been given, any of the following acts, done without justification by a promisor in a contract before he has committed a breach under the rules stated in §§ 314-315, constitutes an anticipatory repudiation which is a total breach of contract:

" . . .

"*e.* The doctrine of anticipatory breach is not extended to unilateral contracts unless the promisor's duty is conditional on receipt by him, at some time subsequent to the repudiation, of the agreed exchange for his promise or performance. The mere happening or performance of a condition is not enough, unless the performance is part of the agreed exchange of performances in the transaction, even though it is not promised. . . . There must be an element of an exchange of values still unperformed in order to make a breach by anticipatory repudiation possible."

Our conclusion in this case is influenced by the reasoning of the Supreme Court of California in *Cobb v. Pacific Mut. Life Ins. Co.,* 4 Cal. (2d) 565, 573, 51 P. (2d) 84 (1935). The court said:

" . . . There can be no anticipatory breach of a unilateral contract (Williston on Contracts, vol. III, sec.

1328.) In volume 1, Restatement of Contracts, California Annotations, section 318, the rule is thus stated: 'In unilateral contract for payment in instalments after default of one or more no repudiation can amount to an anticipatory breach of the rest of the instalments not yet due.' (Citing a list of California decisions.) It is also the law that a bilateral contract becomes unilateral when the promisee has fully performed. In the case at bar the promisee had fully performed. He was exempt from future performance so far as dues or assessments were concerned. The fact that he was required or requested to submit to reasonable future medical examinations or furnish an occasional health report is too trivial and inconsequential to be regarded as an unperformed obligation on the part of the insured. He was therefore within the exception stated in the rule which holds that no repudiation can amount to an anticipatory breach of the rest of the instalments not yet due. . . ."

Instruction No. 9, quoted *supra*, is erroneous. The quoted portion of defendant's requested instruction No. 12 should have been given.

We believe the application of the rule we have discussed will result in substantial justice in both the instant case and in future cases of a similar nature. While it is true that plaintiff's incapacity may shorten his life expectancy, it is also possible that relief from financial burdens may lengthen it.

This action establishes the validity of the contract of accident insurance according to its terms. Plaintiff is entitled to monthly payments of $100 as long as he is totally and permanently disabled. Should plaintiff recover, or die, the payments end. Thus, the contract controls the rights of both parties until its terms are fulfilled.

We believe this is sufficient to illustrate that a judgment for "the amount of money presently required to pay to plaintiff the sum of $100 a month for his life expectancy" is based upon a speculative hypothesis. *Howard v. Benefit Ass'n of R. Employees*, 239 Ky. 465, 39 S. W. (2d) 657, 81 A. L. R. 375 (1931). In a case such as this, the terms of the contract should control the rights and obligations of the parties.

It is urged that, if defendant company becomes hostile

to the insured, plaintiff may be compelled to bring an action on every installment that falls due, causing a multiplicity of actions. The California Supreme Court considered this argument and said:

" . . . It would seem that a reasonably sound business policy would of itself be a sufficient consideration to deter an insurer against practices which could not do otherwise than bring discredit to it. Besides, the law ought to be able to offer relief where compensation is wilfully and contumaciously withheld. . . . " *Cobb v. Pacific Mut. Life Ins. Co., supra* (p. 574).

In addition, defendant, a foreign corporation, must comply with the insurance laws established by the legislature and administered by the state insurance commissioner for the protection of resident policy holders in order to do business in this state.

Although there must be a modification of the judgment, it does not follow that the parties will be put to the expense of another trial, for the modification is only a mathematical computation. Rule on Appeal 16, RCW, Vol. 0, authorizes this court to direct entry of proper judgment.

In summary:

(a) Inherent in the jury verdict is a determination that the accident insurance policy, for which plaintiff applied (the terms of which are pleaded and proved), is binding upon defendant, in accordance with its terms, for the benefit of plaintiff. This determination is affirmed.

(b) The evidence is undisputed that $2000 of plaintiff's verdict is for his medical expense. In this amount, the judgment is affirmed.

(c) The judgment of $25,730, as the present value of the $100-a-month annuity during plaintiff's life expectancy, is reversed.

(d) Plaintiff is entitled to a money judgment against defendant in an amount determined by defendant's requested instruction No. 12, quoted *supra*.

(e) Plaintiff is entitled, in accordance with Rule of Pleading, Practice and Procedure 15(d), RCW, Vol. 0, to serve and file a supplemental complaint, claiming judg-

ment for monthly payments under the policy to the date of filing. It must be served and filed within 30 days after this decision becomes final.

(f) The case is remanded to the trial court, with instructions to enter judgment in accordance with this summary.

Both parties, having prevailed in part, shall bear their own costs on appeal. Rule on Appeal 55 (b) (1), RCW, Vol. 0.

It is so ordered.

FINLEY, C. J., HILL, ROSELLINI, and FOSTER, JJ., concur.