461 P.2d 285

**Harry C. GREGUHN, Plaintiff and Respondent,**

v.

**MUTUAL OF OMAHA INSURANCE COMPANY, Defendant and Appellant.**

**Harry C. GREGUHN, Plaintiff and Respondent,**

v.

**UNITED BENEFIT LIFE INSURANCE COMPANY, Defendant and Appellant.**

**No. 11544.**

Supreme Court of Utah.

Nov. 14, 1969.

---◆---

James E. Faust, Salt Lake City, for defendants and appellants.

John L. Black, of Rawlings, Roberts & Black, Richard W. Woolley, Salt Lake City, for plaintiff and respondent.

TUCKETT, Justice.

The plaintiff filed a separate action against each of the defendants to recover benefits due under health and accident policies issued by the defendants. The two cases were consolidated for trial. From an adverse verdict and judgment of the court below the defendants have appealed to this court.

On May 12, 1962, the defendant United Benefit Life Insurance Company issued a policy to the plaintiff, and on May 8, 1964, the defendant Mutual of Omaha Insurance Company issued a policy to the plaintiff. Both policies insured the plaintiff against loss arising from sickness or accident. At the time the policies were issued and for more than 20 years prior thereto the plaintiff had worked as a brick mason. During his adult life, except for a short period of time in the army and during another six-month interval when the plaintiff worked at a brewery, he had followed the trade of a brick mason. The record shows that the plaintiff's schooling had ended at the fifth grade.

The pertinent provisions of the policies we are here concerned with are: The Mutual of Omaha policy defines injuries as follows: "Injuries mean accidental bodily injuries received while this policy is in force and resulting in a loss independently of sickness and other causes." In the same policy the phrase "total loss of time" means "that period of time during which you are unable to engage in any other gainful work or service for which you are reasonably fitted by education, training or experience."

In the policy issued by United Benefit Life Insurance Company the insuring clause of the policy states that the policyholder is insured "against loss of life, limb, or sight resulting directly and independently of all other causes from accidental bodily injuries received while this policy is in force," and the term "loss of time" means "that period of time for which the insured is able to perform none of his occupational duties."

On September 21, 1964, while the plaintiff was working as a brick mason, a plank which was a part of the scaffold on which he was working fell from beneath him. The plaintiff caught himself with one hand on the wall and the other hand on the scaffold which prevented him from falling to the ground below. The plaintiff remained hanging until a fellow employee assisted him in regaining a position on the

scaffold. Approximately an hour after this incident the plaintiff began to suffer pain in his back.

The next day the plaintiff continued to suffer pain in his lower back which radiated down his left leg. The plaintiff consulted Dr. Robert H. Lamb, an orthopedic surgeon. Dr. Lamb examined the plaintiff and took X-rays of the plaintiff's back and as a result he concluded that the plaintiff had a pre-existing condition of the back known as spondylolisthesis. This defect might be either congenital or acquired. Dr. Lamb was also of the opinion that the plaintiff had received an injury causing pressure on the new nerve roots at the lower lumbar level accounting for the plaintiff's numbness and pain.

The plaintiff was treated by a course of physical therapy in the hospital which treatment did not relieve his symptoms, and subsequently two surgical procedures were performed in an effort to effect a cure of the plaintiff's back problems.

The defendants made payments to the plaintiff pursuant to the terms of the policies until on or about June 1965 when the defendants notified the plaintiff that the plaintiff's ailment would be considered a loss due to illness without confinement, and that a payment of $300 would represent the final payment of benefits under the policies. Upon failure of the defendants to further perform, these actions resulted.

Trial was had in the court below on the issues as to whether or not the plaintiff was totally and permanently disabled within the terms and conditions of the policies, and whether or not the accidental fall of the plaintiff activated and precipitated a latent condition of the plaintiff's back to a disability condition. During the course of the trial the plaintiff testified that he had experienced no back problems prior to the accident of September 21, 1964, and that he had continuously worked as a brick mason for approximately 30 years except for two short periods. The plaintiff's attending physician, Dr. Lamb, testified that he was of the opinion that the plaintiff would be unable in the future to continue on with the trade of brick masonry. The defendants also called medical experts who testified as to the plaintiff's condition. The testimony of these physicians conflicted in some respects with the testimony of Dr. Lamb, but it was generally agreed that the plaintiff would be unable to follow his trade as a brick mason. There was some testimony to the effect that the plaintiff might be physically capable of engaging in some other line of work such as brick masonry contracting.

The jury returned a general verdict finding the issues in favor of the plaintiff. After the verdict was returned, the court calculated the amount due under the terms of the policies together with interest to the time of trial. In addition thereto the court

found that the defendants had repudiated their contracts of insurance and concluded that the plaintiff was entitled to a lump sum judgment for future benefits which would accrue under the terms of the policies. The court received evidence as to the life expectancy of the plaintiff and based thereon calculated and made a finding as to future benefits.

■ The defendants are here contending that the evidence failed to show that the plaintiff was totally disabled and that his disability did not result from the accident alone exclusive of all other causes. While it is true that plaintiff suffered from a condition of the back, there is no dispute in the evidence that the plaintiff had carried on his trade as a brick mason over a long period of time without being aware that he had a defect known as spondylolisthesis and without that condition interfering with his work. It must be concluded that the defendants when they issued their policies of health and accident insurance took the plaintiff in the condition they then found him. There is evidence of record from which the jury could conclude that the plaintiff's disability resulted proximately from the accident and that the nondisabling and dormant condition of the

plaintiff's back was precipitated into a disabling condition by the accident in question.[1] While the defendants excepted to the court's instructions to the jury and also excepted to the refusal of the court to give certain of the defendants' requested instructions, from our review of the instructions we are of the opinion that the issues were fairly and adequately submitted to the jury and we find no grounds for reversal of the verdict.

■ This brings us to what we consider the most critical problem in the case. Did the court err in granting an award for future disability under the doctrine of anticipatory breach? This problem is one of first impression in this jurisdiction. While the defendants cite the case of Colovos v. Home Life Insurance Co. of New York[2] as being an expression by this court as to what the rule is, an examination of the case reveals that the doctrine of anticipatory breach was not before the court. The decisions of a number of the states permit an insured to recover a money judgment for the present value of future payments based upon the insured's life expectancy. However, the great majority of decisions permit recovery under a disability policy only of installments accrued and un-

1. Lee v. New York Life Ins. Co., 95 Utah 445, 82 P.2d 178; Colovos v. Home Life Ins. Co. of New York, 83 Utah 401, 28 P.2d 607; White v. National Postal Transport Assn., 1 Utah 2d 5, 261 P.2d 924.

2. See note 1, supra.

paid.[3] The doctrine of anticipatory breach has not ordinarily been extended to unilateral contracts. As stated in the Restatement of Contracts:[4] In unilateral contract for the payment in installments after default of one or more, no repudiation can amount to an anticipatory breach of the rest of the installments not yet due. We are of the opinion that it was error for the trial court to enter judgment for future benefits to become due under the policies.[5]

The verdict and the decision of the trial court amounts to a determination that the plaintiff is entitled to the monthly payments as specified in the insurance policies so long as he is totally and permanently disabled. Defendants are not relieved of the obligation of making the payments unless the plaintiff should recover or die. Should the defendants fail in the future to make payment in accordance with the terms of the policies without just cause or excuse and the plaintiff is compelled to file another action for delinquent installments, the court at that time should be able to fashion such relief as will compel performance.

This matter is remanded to the trial court with directions to modify its judgment so as to eliminate that part of the judgment pertaining to future benefits under the policies. Plaintiff (respondent) is entitled to costs.

CROCKETT, C. J., and CALLISTER and HENROID, JJ., concur.

ELLETT, Justice (dissenting).

I dissent.

The plaintiff claimed that he was totally and permanently disabled under the terms of the policies written by the defendants. After making some periodic payments, the defendants denied any liability to make further payments on the grounds that if the plaintiff had any disability, it was not related to causes covered in the policies.

By rendering its verdict in favor of the plaintiff, the jury found that plaintiff was permanently and totally disabled under the terms of the policies. There was evidence to support the verdict and, therefore, the issue of the permanency and totality of the disability under the policies has been concluded, and the prevailing opinion accepts these facts.

---

3. Appleman, Insurance Law and Practice, Vol. 21, p. 534, Sec. 12582; Couch on Insurance, 2d Vol. 15, Sec. 53:333.
4. Restatement of Contracts, Vol. 1, Sec. 318. See also Williston on Contracts, Vol. III, Sec. 1328.
5. In New York Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971, Mr. Justice Cardozo in referring to the case of Federal Life Ins. Co. v. Rascoe,

6 Cir., 12 F.2d 693, stated that it was one of the few decisions to the contrary and was disapproved in Mobley v. New York Life Ins. Co., 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621, and is now disapproved again. Fanning v. Guardian Life Ins. Co. of America, 59 Wash.2d 101, 366 P.2d 207; Cobb v. Pacific Mutual Life Ins. Co. of Calif., 4 Cal.2d 565, 51 P.2d 84.

While the majority of cases listed in the digests have held that recovery in actions involving health and accident policies is limited to accrued and past-due installments, there is respectable and, in my opinion, better reasoned authority to the contrary.[6]

In those actions which have been brought to interpret, apply, or enforce the terms of a policy and where no repudiation of further liability is involved, then the recovery is properly limited to accrued and past-due installments. However, where there is a repudiation of all contractual obligations, I think it is the better policy to allow full recovery in one action, as was done in the case now before us.

Some of the cases which limit recovery to past-due installments do so because of a provision in the policy requiring the insured to furnish proof of continued disability as a condition of liability to pay. This should not be necessary where there has been a determination in court that the disability is *total* and *permanent*.

It does not appeal to me as being just or fair to permit an insurer which has breached its contractual obligation to pay, to insist that the insured must *abide* by the terms of the contract insofar as those terms favor the insurer. One who abrogates his contract is in no position to compel the other party to be bound by the terms of the contract.

Some of the cases which limit recovery to past-due installments do so upon the ground that to permit a recovery beyond the installments as set out in the contract would be in abrogation of the express provisions of the contract.

Such a holding confuses a suit for specific performance with an action in damages for breach of contract.

At common law an action of Debt would lie for money due under a contract, but only one cause could be brought on the contract. Where a contract was to be performed in installments, an action could not be maintained until all installments were due. The action of Assumpsit changed the law so that recovery could be had as soon as there had been a nonperformance of any installment obligation. However, the idea that only one action would lie for breach of a contract still persisted, and so a plaintiff had to recover all damages in one action, including installments not yet due. He got judgment for the total amount promised when there was a breach of the one installment of the contract.

Later on in the process of development of the law, installment contracts came to be regarded as divisible into separate parts, and thus an action of Indebitatus Assumpsit (he promised to pay) would lie upon

6. See annotations in 81 A.L.R. 379 and 99 A.L.R. 1171.

each installment as it became due. See Corbin on Contracts, § 949.

In the case of Federal Life Ins. Co. v. Rascoe, 12 F.2d 693 (C.C.A.6th, 1926), (cert. den. 273 U.S. 722, 47 S.Ct. 112, 71 L.Ed. 859), it was held that "if there has been an actual breach, coupled with repudiation, of this one contract, then, to avoid a multiplicity of suits, public policy requires that plaintiff may maintain but one action for the entire damages occasioned by such breach."

While certiorari was refused in this case, it has been disapproved in two subsequent cases by the United States Supreme Court, on the ground that the failure to pay several installments when due was not enlarged into a total breach by a declaration that the policy had lapsed.

In one of these two cases, Mobley v. N. Y. Life Ins. Co., 295 U.S. 632, 55 S.Ct. 876, 79 L.Ed. 1621, the plaintiff had submitted to a physical examination pursuant to the policy after the dispute had arisen as to his disability. He filed his action the next day and before the defendant had had an opportunity to know the results of the examination. The Supreme Court affirmed the trial court in holding that there was no repudiation of the contract.

The other case was that of N. Y. Life Ins. Co. v. Viglas, 297 U.S. 672, 56 S.Ct. 615, 80 L.Ed. 971. This case went up on a demurrer, and the Supreme Court held that the complaint had not alleged that the insurer had disclaimed the intention or the duty to shape its conduct in accordance with the provisions of the contract. After holding that there was not stated a cause for repudiation, the Court said: "What the damages would be if there had been complete repudiation we do not now decide."

In Yarbrough v. General Am. Life Ins. Co., 241 F.Supp. 448, 454 (1965), it was held that "where an insurer repudiates its contractual obligations, * * * by refusing to comply with the terms thereof * * * or by manifesting an intent not to perform an obligation * * * established to be due or to become due in the future, an insured entitled to disability payments is not limited in his recovery to installments which have accrued * * * but may recover in addition to such installments the present value of future installments which will fall due under the policy, calculated with reference to the insured's life expectancy."

In the case of Continental Casualty Co. v. Vaughn, 407 S.W.2d 818 (Tex.Civ.App. 1966), it was held that the contention of an insurer to the effect that the injury to insured was not an accidental injury supported a finding that such denial of liability was made without just cause, and that the insurer had committed an anticipatory breach which thus permitted a

recovery of damages measured by the present value of unmatured installments.

The case of Indiana Life Endowment Co. v. Reed, 54 Ind.App. 450, 103 N.E. 77, 80 (1913), stated:

> * * * A denial of all liability, where liability has attached, is held to give the injured party the right to treat the contract as broken or repudiated and to pursue his remedy for damages for the breach and to recover, once for all, in a single suit all that may ultimately be due him.

Other cases supporting this rule are Equitable Life Assurance Soc. of U. S. v. Pool, 189 Ark. 101, 71 S.W.2d 455 (1934); Travelers Ins. Co. v. Lancaster, 51 Ga. App. 390, 180 S.E. 641 (1935); Aetna Life Ins. Co. v. Phifer, 160 Ark. 98, 254 S.W. 335 (1923).

There can be no quarrel with the rule that where the contract has become wholly unilateral, as where nothing further is to be done by the plaintiff, the mere failure to pay one or more installments when due would not, in and of itself, be considered a repudiation of the contract as to future payments, since the breach does not go to the essence of the contract. However, where there is a failure to pay one installment, coupled with an announcement by the insurer that no future payments will be made, then damages for the partly anticipatory breach should be allowed. See Corbin on Contracts, Sec. 966.

Since the plaintiff in this case was determined to be totally and permanently disabled, the defendants cannot relitigate those matters. By assuming the defendants would pay according to the contract, the prevailing opinion ignores the fact that the plaintiff sued for damages, not specific performance, and would compel him to abide by terms of the contract when neither party requests such a ruling. The decision grants to the defendants an opportunity to refuse again to pay the installments to plaintiff and says that in such an event the trial court "should be able to fashion such relief as will compel performance." I am unable to know just what relief the decision has in mind. Under the pleadings as framed in this case, the relief to which plaintiff was entitled has already been given him.

If it appears, as in this case, that a party to a contract makes an outright refusal to comply with the terms thereof and so notifies the other party, then I can see no legal reason why that other party may not accept the anticipatory breach of the contract and sue for his damages. What reason is there in law or good conscience to give a locus penitentiae to the party whose wrongful conduct precipitates a lawsuit? Why should an appellate court set the stage for further litigation when the matters have already been fully determined?

By informing the plaintiff herein that no further payments would be made upon the

policies, the defendants were guilty of an executory breach of the contracts which entitled the plaintiff to sue for his damages and to put an end to further litigation.

I would affirm the judgment of the trial court and in so doing would ignore the dictum in the case of Colovos v. Home Life Ins. Co. of New York, 83 Utah 401, 412, 28 P.2d 607 (1934).